CONNECTICUT LIFE AND HEALTH INSURANCE GUARANTY
ASSOCIATION *v.* JAY W. JACKSON,
INSURANCE COMMISSIONER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 7—decision released August 2, 1977

*Ralph G. Elliot,* for the appellant (plaintiff).

*John G. Haines,* assistant attorney general, with whom were *Barney Lapp,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, for the appellee (defendant).

LONGO, J.  The plaintiff brought this action in the Superior Court, seeking a declaratory judgment and injunctive relief as a result of the defendant's interpretation of General Statutes § 38-308 (j).  The defendant filed a plea in abatement alleging that the Superior Court lacked jurisdiction, and the court sustained the plea on the ground that the plaintiff had failed to exhaust its administrative remedy.  The plaintiff appealed to this court from the judgment rendered on the plea in abatement.

The facts giving rise to this action are not in dispute.  The plaintiff, hereinafter CLHIGA, was created by the legislature to provide protection to policyholders of life and health insurance when the company issuing a policy became impaired and could not honor its obligations.  General Statutes §§ 38-301–38-318.  CLHIGA's members are insurance companies and the association is under the supervision of the insurance commissioner.  Sometime between October 1, 1972, and October 1, 1975, Seaboard Life Insurance Company of America, an insurer covered by the act, became an impaired insurer within the meaning of the statute and presented the first occasion for an interpretation of certain sections of the CLHIGA act.  The parties agree that CLHIGA is responsible for some portion of Seaboard's obligations, but they disagree over the extent of CLHIGA's liability.  The dispute arose over the proper interpretation of General Statutes

§ 38-308 (j) which, at the time Seaboard became impaired,[1] read as follows: "The contractual obligations of the impaired insurer for which the association [CLHIGA] becomes or may become liable shall be as great as but no greater than the contractual obligations of the impaired insurer would have been in the absence of an impairment unless such obligations are reduced as permitted by subsection (d) of this section but the association shall have no liability with respect to any portion of a covered policy to the extent that the death benefit coverage on any one life exceeds an aggregate of twenty-five thousand dollars, or to the extent that any benefit under a covered policy other than life insurance exceeds an aggregate of twenty-five thousand dollars." The plaintiff's complaint discloses the gravamen of the dispute when it states: "Defendant is enforcing, and will enforce Sec. 38-308 (j) with respect to Seaboard, and has interpreted that statute as requiring CLHIGA to pay up to $25,000 on any one life, *including* but not limited to surrenders, policy loans, options and privileges relating to such values and non-forfeiture benefits, for policy holders whose aggregate death benefits *do exceed* $25,000." The plaintiff contends that "the correct interpretation of Sec. 38-308 (j) requires plaintiff's death benefit coverage obligation to be limited to $25,000, and its obligation on any other values (such as cash values or loan values) arising under the policy or contract to be limited to a value based upon a death benefit of $25,000, with a value of a given policy being determined from the table of values in that policy—a table which demonstrates

---

[1] General Statutes § 38-308 (j) was amended effective October 1, 1975. 1975 Public Acts, No. 75-18. That amendment is not relevant to this litigation.

cash values, loan values, paid up values, and extended term durations for each $1,000 of insurance, and thus controls the internal values of that policy." In its complaint the plaintiff requested a declaratory judgment interpreting General Statutes § 38-308 (j) and injunctions restraining the defendant from enforcing the statute in accordance with his interpretation and requiring him to enforce the statute as interpreted by the plaintiff.

The principal question posed by this appeal from the judgment sustaining the defendant's plea in abatement is whether the Superior Court lacked jurisdiction to entertain the plaintiff's complaint. The trial court determined that the plaintiff had an administrative remedy consisting of a petition to the insurance commissioner for a declaratory judgment ruling pursuant to General Statutes § 4-176[2] which could be reviewed in the Court of Common Pleas, as provided by General Statutes § 4-175[3] and

[2] "[General Statutes] Sec. 4-176. DECLARATORY RULINGS. Each agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision or of any regulation or order of the agency, and each agency shall provide by regulation for the filing and prompt disposition of petitions seeking such rulings. If the agency fails to exercise its discretion to issue such a ruling, such failure shall be deemed a sufficient request by the plaintiff for the purposes of section 4-175. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases."

[3] "[General Statutes] Sec. 4-175. DECLARATORY JUDGMENT ACTION TO DETERMINE VALIDITY OR APPLICABILITY OF REGULATION. The validity or applicability of a regulation or order of an agency may be determined in an action for declaratory judgment brought in the court of common pleas for Hartford county, if the regulation or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may not be rendered unless the plaintiff has requested the agency to pass upon the validity or applicability of the regulation or order in question, pursuant to section 4-176, and the agency has either so acted or has declined to exercise its discretion thereunder."

§ 4-183.[4] The plaintiff denies the availability of the administrative remedy described by the trial court and argues that in any event it is not the exclusive means by which declaratory relief may be sought.

In support of its claim that an administrative remedy is unavailable, CLHIGA argues that the grant of authority to agencies in § 4-175 to rule on the "applicability" of statutory provisions only permits an agency to determine whether a statute applies to a given set of facts and does not permit statutory interpretation. We find this argument without merit. There are clear indications in the Uniform Administrative Procedure Act (UAPA); General Statutes §§ 4-166–4-189; that the legislature intended that administrators issue declaratory rulings based on their interpretations of statutes. Section 4-183 (g) allows judicial reversal or modification of an agency decision that is "[i]n violation of constitutional or statutory provisions" or "affected by other error of law." Section 4-175 provides that a declaratory judgment may not be rendered by the Court of Common Pleas unless the plaintiff has first requested the agency "to pass upon the *validity* or applicability of the regulation or order in question, pursuant to section 4-176." (Emphasis added.) As the trial court observed, administrative agencies must necessarily interpret statutes which are made for their guidance. To rule otherwise would be to ignore the subtle and intricate interaction of law and fact. It is inherent in our

[4] "[General Statutes] Sec. 4-183. JUDICIAL REVIEW. WAIVER OF COSTS. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter. . . . This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief or trial de novo provided by law. . . ."

judicial system of dispute resolution that the interpretation of statutes, like the development of the common law, grows out of the filtering of a set of facts through the law, as seen by the administrator or judge. The result of this application is a hybrid, composed in part of fact, in part of law, which by its existence contributes to the interpretation of a statute. As is recognized by our policy of declining to give advisory opinions; *Reply of the Judges,* 33 Conn. 586; by our doctrines of standing and mootness and by our desire that even declaratory rulings be grounded in some real controversy, a statute cannot be read in a vacuum but must be illuminated by the force of concrete, everyday pressures. We conclude that CLHIGA has an administrative remedy.

CLHIGA contends that even if an administrative remedy is available to it under the UAPA, the remedy is not exclusive. This court, however, has repeatedly affirmed the principle that when an adequate administrative remedy is provided by law, it should be exhausted. *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483; *State Water Commission* v. *Norwich,* 141 Conn. 442, 447, 107 A.2d 270; *McNish* v. *American Brass Co.,* 139 Conn. 44, 53, 89 A.2d 566. The UAPA provides a completely adequate method of resolving the questions presented by this case. The real issue in this case, therefore, becomes whether the method provided in the UAPA is exclusive and assumes precedence over any other form of relief. Though the UAPA contains no provisions for exclusivity, the legislature did indicate its intention that the agencies and the Court of Common Pleas be the principal forums for deciding such questions, by stating that the UAPA applies to all agencies and agency proceedings not specifically exempted (§ 4-185); by expressly charg-

ing the Court of Common Pleas with responsibility for reviewing administrative actions and rendering declaratory judgments after the agency has passed on the validity or applicability of a regulation or order or has declined to do so (§ 4-183 [b], § 4-175); by granting the Court of Common Pleas the power to stay agency orders (§ 4-183 [c]); and by repealing all statutes which are inconsistent with the UAPA (§ 4-189). CLHIGA argues that a contrary intention may be inferred from § 4-183 (a) which provides: "This section does not limit utilization of or the scope of judicial review available under other means of review, redress, relief or trial de novo provided by law." We disagree with CLHIGA's reading of this provision. First, the statute speaks of "judicial review," indicating that § 4-183 (a) is principally addressed to forms of relief which are available after relief has been sought through an agency. In *McDermott* v. *Commissioner of Children & Youth Services*, 168 Conn. 435, 441, 363 A.2d 103, we held that § 4-183 was intended to allow parties to resort to separate statutory appellate procedures applicable to particular agencies as an alternative to the method of review provided by the UAPA. General Statutes § 52-29, granting declaratory judgment jurisdiction to the Superior Court, does not qualify as the type of "separate statutory authorization" we spoke of in *McDermott*. The procedures we contemplated in *McDermott* did not involve the complete bypassing of an administrative agency with undeniable jurisdiction over the subject matter of the dispute. The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's find-

ings and conclusions. To allow a party seeking a declaratory judgment to bypass the entire process under certain circumstances would be to interject an unnecessary and potentially confusing element into an otherwise well-defined area of the law. CLHIGA argues that this case presents a question solely of law and that the defendant commissioner's fact-finding ability and expertise in the insurance field could not contribute significantly to the court's acquittal of its historically defined role as interpreter of the law. This argument, however, while enticing, is not persuasive. Rather, we believe that stronger justification is required for us to create an exception to the present process. CLHIGA has failed to demonstrate any way in which it will be injured by being forced to pursue its administrative remedy. Absent a showing that its administrative remedy cannot provide adequate relief, CLHIGA should not be allowed to seek other relief. Furthermore, as we discussed above, the plain intent of the legislature in enacting the UAPA was to permit agencies to decide questions of law and to designate agencies, along with the Court of Common Pleas, as the principal forums for declaratory relief.

The question remains whether the defendant's challenge to the plaintiff's action was properly presented as a plea in abatement questioning the court's jurisdiction to hear the case. General Statutes § 4-189 repeals all provisions of the General Statutes which are "inconsistent" with the UAPA. It is a tenet of statutory construction that if two seemingly contradictory statutes can be construed harmoniously, both should be given effect. *Hirschfeld* v. *Commission on Claims,* 172 Conn. 603, 607, 376 A.2d 71. The two statutory schemes at issue here can be read so that the judicial review

provisions of the UAPA constitute grounds for the court to decline to exercise its declaratory judgment jurisdiction pursuant to Practice Book § 309 (c).[5] Since this construction must prevail, the Superior Court clearly had jurisdiction over the case but acted properly in declining to hear it. The defendant's challenge would have been properly raised by a demurrer; *Glen Falls Ins. Co.* v. *Somers,* 146 Conn. 708, 156 A.2d 146; but since the plaintiff did not complain of the manner in which the challenge was raised and since both parties appear to have thoroughly understood the issues presented on appeal, we conclude that no purpose would be served by returning the case to the Superior Court for further pleading.

There is no error.

In this opinion the other judges concurred.

---

[5] Practice Book § 309 (c) reads: "The court will not render declaratory judgments upon the complaint of any person . . . where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure."