CONNECTICUT LIFE AND HEALTH INSURANCE GUARANTY
ASSOCIATION *v.* T. F. GILROY DALY, INSURANCE
COMMISSIONER, ET AL.

COURT OF COMMON PLEAS   HARTFORD COUNTY   FILE NO. 133068

Memorandum filed November 15, 1977

*Alcorn, Bakewell & Smith,* for the plaintiff.

*Carl R. Ajello,* attorney general, and *John G. Haines,* assistant attorney general, for the named defendant.

KINNEY, J. This case is an appeal under the Uniform Administrative Procedure Act; General Statutes, c. 54; from a declaratory ruling of the defendant insurance commissioner and an order directing the plaintiff to comply with that ruling.

The plaintiff association is composed of insurance companies which write life and health insurance in Connecticut. The association was created by the General Assembly to provide protection to policy-

holders of life and health insurance in instances where the company issuing the policies becomes impaired and cannot honor its contractual obligations.

The dispute between the plaintiff and the defendant commissioner arises out of conflicting interpretations of General Statutes § 38-308 (j) which concerns the obligations of the plaintiff to the policyholders of an impaired insurer. The plaintiff contends that the statute obliges the association to pay only a proportionate part of policy values, such as cash and surrender values, where the death benefit policy coverage exceeds $25,000. The commissioner has ruled that § 38-308 (j) obligates the plaintiff to pay in full all policy obligations and values up to $25,000, irrespective of any excess of death benefit coverage over $25,000.[1]

Just prior to taking this appeal the plaintiff instituted an action in the Superior Court seeking a declaratory judgment to resolve this controversy. The Superior Court sustained a plea in abatement to that action and the Supreme Court affirmed on the ground that the Uniform Administrative Procedure Act provided the plaintiff with an adequate opportunity for judicial review of the commissioner's declaratory ruling. See *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352. In its opinion the Supreme Court at least implicitly invited the plaintiff to institute a declaratory judgment action in the Court of Common Pleas under § 4-175 of the Uniform Administrative Procedure Act. The plaintiff, adopting this suggestion, has instituted such an action in this court.

While the Superior Court declaratory judgment action was pending, the plaintiff, anticipating that

---

[1] General Statutes § 38-308 (j) was amended by Public Acts 1975, No. 75-18, effective October 1, 1975, to specify $300,000 where it had previously specified $25,000.

that action might be dispositive of the subject matter of this appeal, sought and obtained in this case a stay of the commissioner's ruling and order. As indicated, the prior declaratory judgment action did not prove dispositive of the issue in controversy.

The plaintiff now seeks an extension of the stay previously ordered herein until final judgment in this appeal or final judgment in the declaratory judgment action instituted in this court, whichever last occurs. The defendant opposes this extension, claiming that the plaintiff has failed to make an adequate showing to justify continuance of the stay order.

A stay of an order or ruling of an administrative agency is authorized in an administrative appeal by § 4-183 (c) of the statutes which provides: "The filing of the petition [for judicial review] does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms." This language was adopted almost verbatim from the Revised Model State Administrative Procedure Act. 2 Cooper, State Administrative Law, p. 627. The statute and the model act are completely silent as to what standards should apply to an application for a stay order. Approximately half the states with administrative procedure acts employ language substantially similar to that used in § 4-183 (c) and the model act. The other half incorporate standards such as good cause, the threat of irreparable harm, consideration of the public interest, and the like. 2 Cooper, op. cit., p. 627.

The only reported Connecticut case addressing itself to the question of criteria applicable to a stay order application is *Waterbury Hospital* v. *Commission on Hospitals & Health Care,* 30 Conn. Sup. 352. The court there held (pp. 354-55): "In the con-

sideration of applications for stay orders, the applicant must make a strong showing of the probability of succeeding on the merits of its appeal, of the probability of irreparable injury, and of the probability that the stay order will not be harmful to the public interest or to other parties." The threefold test proposed by the *Waterbury Hospital* case erects a very substantial obstacle to any applicant for a stay order. In the opinion of this court, the test is too stringent.

The *Waterbury Hospital* case is distinguishable on its facts. That case involved an application for retroactive implementation of rates. Additionally the case did not purport to decide what § 4-183 (c) of the Uniform Administrative Procedure Act requires, but, rather, concerned the language of a specific statute, § 19-73p, applicable to appeals from the commission on hospitals and health care. Furthermore, the three-pronged test of the *Waterbury Hospital* case was derived from two cases which arose under the federal administrative procedure act. Both cases relied on by the court in the *Waterbury Hospital* case, *Hamlin Testing Laboratories, Inc.* v. *United States Atomic Energy Commission*, 337 F.2d 221 (6th Cir.), and *Virginia Petroleum Jobbers Assn.* v. *Federal Power Commission*, 259 F.2d 921 (D.C. Cir.), were decided under the federal administrative procedure act (formerly 5 U.S.C. § 1009 [d], now 5 U.S.C. § 705) which specifically provides that stay orders may be granted "to the extent necessary to prevent irreparable injury." As noted, § 4-183 (c), unlike the federal act, contains no irreparable injury standard. The *Waterbury Hospital* case and the federal cases upon which it relies are not considered controlling as to the interpretation of § 4-183 (c).

Though lacking explicit criteria, the statute, by providing that a stay order is not automatic, sug-

gests that some standard be applied to stay order applications. 2 Cooper, op. cit., p. 629, indicates that it is appropriate for the reviewing court to apply a balancing test—a test which weighs the equities and balances the harm that may be suffered by the appellant as a result of enforcement of the agency order or decision, pending the appeal, against the public harm that may result from delaying the effectiveness of the order or decision. A standard of this nature seems to the court fair, workable, not insurmountable, and one which considers both the interests of the appellant, the agency and those the agency represents. Application of that test to the plaintiff's request for extension persuades the court that extension of the stay order is warranted.

There is a bona fide issue between the plaintiff and the commissioner. The statute in question has not been interpreted by the courts. There appears to be some merit to the interpretation of the statute advanced by the plaintiff. The plaintiff's appeal and declaratory judgment action cannot be characterized as frivolous or dilatory.

In the event the commissioner's interpretation is required to be implemented pending resolution of the pending litigation large sums of money may have to be disbursed by the plaintiff to individual policyholders. There is a real and substantial risk that those disbursements may not be recoverable by the plaintiff if it ultimately succeeds on the merits in its litigation. Extension of the stay order would preserve rather than alter the status quo.

The plaintiff is willing to agree that for the duration of the stay it will process and make payment on all applications for payments due policyholders in accordance with its interpretation of § 38-308 (j), without prejudice to the rights of policyholders to additional payments if they become entitled thereto

as a result of the pending litigation. While the court lacks statistics as to the number of policyholders affected by this controversy it would appear that only a limited number of policyholders of one impaired insurance company would be affected by the stay order. As previously noted § 38-308 (j) was amended to increase the policy limit provision to $300,000, which should appreciably minimize the number of policyholders involved in the dispute over the meaning of § 38-308 (j).

The court concludes, on balance, that the equities favor an extension of the stay order until the litigation between the parties is resolved.

No unusual delay need be expected before the declaratory judgment action can be heard by the court. The parties are thoroughly familiar with the issues, the pleadings can be closed promptly, and the declaratory judgment case can and should be consolidated with this appeal and tried within a reasonably short time.

Accordingly, the stay order presently in effect is extended until twenty days after judgment is rendered in this court in this appeal or in the declaratory judgment action pending in this court between the parties, whichever last occurs. This extension is conditioned on the plaintiff's continuing to process and make payment on all applications from policyholders in accordance with its interpretation of § 38-308 (j), without prejudice to the rights of those policyholders to further payments to which they may become entitled as a result of the pending litigation.