[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO SET ASIDE
This matter is before the court pursuant to three motions pending decision.
A. At the time of trial, the defendants herein made a motion to dismiss which the court reserved decision on.
B. A motion for directed verdict for the defendant at the close of the evidence.
C. A motion to set aside the verdict after the jury returned a verdict for the plaintiff.
The court will address the motion to set aside the verdict first since the analysis thereon considers the relief claimed in the other motions pending decision by the court.
Initially the court will note that the cause of action set forth in Count Five was withdrawn from consideration by the court by letter of plaintiff dated October 15, 1993, requesting the court not rule thereon and withdrawing said count.
On a motion to the court to set aside a verdict, the court was to be guided by the following principles.
 "[The court] must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial; Bleich v. Ortiz, 196 Conn. 498, 501, 493 A.2d 236 (1985); giving particular weight to the `Concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . ." Chanosky v. City Building Supply Co., 152 Conn. 642, 643, 211 A.2d 141 (1965). The verdict will CT Page 3951 be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. Bleich v. Ortiz, supra, 500-501; Pinto v. Spagner, 163 Conn. 191, 192-93, 302 A.2d 266 (1972; Chanosky v. City Building Supply Co.,
supra 643"
Bound Brook Association v. Norwalk, 198 Conn. 660, 667 (1986). "In reviewing the evidence, . . . [The court] must give it the most favorable construction in support of the verdict of which it is reasonably capable. See Nash v. Hunt, 166 Conn. 418, 428,352 A.2d 773; Hanauer v. Coscia, 157 Conn. 49, 53, 244 A.2d 611." Healy v. White, 173 Conn. 438, 442 (1977).
 "In reviewing a motion to set aside a verdict claimed to be excessive and manifestly unjust the court must give the evidence supporting the verdict a construction favoring the support of the verdict. Josephson v. Meyers, 180 Conn. 302, 313 (1980). It is only in the most compelling circumstances that the court may set aside a verdict because to do so interferes with the litigants' constitutional right to have issues of fact decided by a jury. Bambus v. Bridgeport Gas Co., 148 Conn. 167, 169 (1961), Shea v. Paczowski, 11 Conn. App. 232."
Connecticut law authorizes trial courts to set aside verdicts that are manifestly unjust and palpably against the evidence. Shaham v. Capparelli, 23 Conn. App. 468, 478 (1990); Malberg v. Lopez, 208 Conn. 675, 6779-80 (1988). Under such circumstances, when a verdict so shocks the sense of justice, the court must conclude that the jury was influenced in reaching its verdict by partiality, prejudice, mistake or corruption, rather than by the evidence and the law.
The Supreme Court enunciated the standard in Winnick v. Nicoli, 185 Conn. 195, 198 (1981) as follows:
 [T]he test seems to be that the motion should be granted if no jury of reasonable men and women, acting solely on the evidence, could render a verdict for the plaintiff. In making the decision, both the trial court and the appellate court start with the proposition that the jury could believe all favorable CT Page 3952 evidence presented by the plaintiff, unless the evidence is clearly incredible by its very nature of becomes incredible by reason of inconsistency with contrary evidence so credible that its rejection would be unreasonable . . . . (Quoting Stephenson, Conn. Civ. Pro. (2d Ed) 192, pp. 758-759).
The jury could have found the following chronology of facts. The plaintiff Thomas Hunt began his employment as a police officer with the Borough of Naugatuck on or about October of 1965.
Thereafter he rose to the rank and was appointed Administrative Captain in March of 1985. During the period from July 1, 1985 through September 22, 1986, Captain Hunt was unable to perform his duties as police office due to a stress disorder affecting his stomach.
In September of 1986 the plaintiff requested to be allowed to return to work.
In October of 1986 prior to acting on the plaintiff's request to be returned to work, the Police Commission promoted Captain William Long to the position of Administrative Captain.
The Police Commission refused to return the plaintiff to full duty pending the resolution of certain charges alleging violations of department rules and regulations.
On or about November of 1986 the commission presented the plaintiff with the charges. In December of 1986 the Borough settled the workers compensation claim with the plaintiff by way of stipulation for a settlement in cash and full pay for all time lost during the claimed incapacity.
In February of 1987 the Commissioner voted to allow the plaintiff to return to work. On or about February 24, 1987 the authorization was provided to the Chairman of the Police Commission who took no action thereon.
On or about March 2, 1987 the plaintiff initiated a writ of mandamus to compel his return to work.
On March 10 the Borough allowed the plaintiff to return to work. CT Page 3953
On March 18, 1987 the Police Commission voted a set of charges be filed against the plaintiff and suspended him with pay pending a disciplinary hearing. In March of 1988 a substituted set of charges was brought against the plaintiff.
In August of 1989 the disciplinary hearings concluded and the plaintiff was found not guilty of all administrative charges. He was reinstated in his position as Administrative Captain and thereafter brought the action subject matter of this case.
Count I of the complaint alleges a violation of the terms of the contract between the City of Naugatuck and the Police Union concerning procedures to be followed in regard to a disciplinary proceeding against a member of the bargaining unit. The agreement contains all of the terms and remedies available to the parties to redress a breach of that contract. The jury could not under any theory of law find under the facts proved that there was an exhaustion of administrative remedies under the contract which was in effect at the time. Contractual damages are the amounts that would be due if the contract were breached. Under all the evidence it was clear the plaintiff was paid during the entire period of claimed suspension. There were no damages under the contract which would accrue to the plaintiff. The facts established, contrary to the jury finding, that there had not been an exhaustion of the administrative remedies. The contract specifically provided the exclusive remedy for grievances. That remedy was the grievance arbitration procedure.
"`It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. Connecticut Life Health Ins. Guaranty Assn. v. Jackson, 173 Conn. 352, 358-59, 377 A.2d 1099 (1977); State ex rel. Golembeske v. White, 168 Conn. 278, 282, 362 A.2d 1354
(1975); see 3 Davis, Administrative Law 20.01; General Statutes4-175, 4-183.' Connecticut Mobile Home Assn., Inc. v. Jensen's, Inc., 178 Conn. 586, 5888, 424 A.2d 285 (1979)." Cummings v. Tripp, 204 Conn. 67, 175, 527 A.2d 1230 (1987). "Because the exhaustion doctrine implicates subject matter jurisdiction, the court must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff[s] claim." Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556, CT Page 3954529 A.2d 666 (1987). "`"Whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." `Chzrislonk v. New York, N.H. H.R. Co., 101 Conn. 356, 358, 125 A. 874 (1924)." Cahill v. Board of Education, 198 Conn. 229, 238, 502 A.2d 410 (1985).
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Concerned Citizens of Sterling v. Sterling, supra, 557; Connecticut Life Health Ins. Guaranty Assn. v. Jackson, supra. "The doctrine of exhaustion `furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review.' Watergate II Apartments v. Buffalo Sewer Authority, 46 N.Y.2d 52, 57, 385 N.E.2d 560,412 N.Y.S.2d 821 (1978)." Cahill v. Board of Education, supra, 242. Most important, a favorable outcome will render review by the court unnecessary; as the United States Supreme Court has noted: "A complaining party; may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657,23 L.Ed.2d 194 (1969); see Kashani v. Nelson, 793 F.2d 818, 825-26
(7th Cir. 1986); Connecticut Bank Trust Co. v. CRHO, 202 Conn. 150,156, 520 A.2d 186 (1987).
From all of the evidence it is clear that as to the claims made under Count I of the complaint the plaintiff failed to exhaust his administrative remedies. There was no evidence that efforts to do so would have been futile (see Greenwich v. Liquor Control Commission, 191 Conn. 528.) or there was a constitutional challenge to the procedures under the bargaining agreement. (LaCroix v. Board of Education, 199 Conn. 70.) The Verdict of the Jury is set aside and the First Count of the complaint is dismissed.
Count II of the complaint alleges a violation of the plaintiff's contractual rights and that those rights were tortuously interfered with by the defendants. The only evidence presented addressed the referral to a hearing of 2 charges which were based on unsworn statements. Evidence disclosed those charges were dismissed or never pursued. There was no evidence that the plaintiff suffered any contractually compensable damages by any alleged breach of the collective bargaining agreement. CT Page 3955 The uncontroverted evidence was that the plaintiff was paid his full salary during the period in controversy, the period he was relieved of duties, March 1987 to August 1989. The collective bargaining agreement submitted into evidence was in effect at the time of the bringing of the charges. This collective bargaining agreement governed the methods and conditions upon which a member of the police department could be disciplined. When unsworn charges were brought against the plaintiff herein, he had the necessary basis to bring a grievance against the Police Commission under the terms of the bargaining agreement. Plaintiff's claim is that he was aggrieved by those charges. However, unless the contract provides otherwise, there is no doubt that the employee must afford the union the opportunity to act on his behalf. Republic Steel Corp. v. Maddox, 379 U.S. 650,652.
By recourse to the grievance procedure, the plaintiff could have required the Police Commission to address the charges enumerated without the alleged sworn affidavits in the grievance procedure. He elected by his own testimony not to do so.
A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the court may never have to intervene. Pet. v. Department of Health Services, 207 Conn. 346,351, citing McKart v. United States, 395 U.S. 185. In this case, the plaintiff did not exhaust his administrative remedies. The court has already reviewed the authorities relative to the exhaustion principal in the analysis to Count I of the complaint and those authorities are incorporated herein.
The jury verdict to Count II is set aside and the claim thereunder is dismissed.
In the Third, Fourth and Sixth Counts of the complaint, the plaintiff claims that the suspension of the plaintiff from the office of Administrative Captain is a violation of the due process and equal protection clauses of the U.s. [U.S.] and State Constitutions and Section 1983 of Title 42 of the U.S. Code.
The analysis of wherein the plaintiff was relieved of duty has to be analyzed in the context of the protected rights claimed violated herein. The pleadings here address the issues of the plaintiff's right to be free of a suspension from his position within the Naugatuck Police Department. CT Page 3956
The plaintiff is claiming a due process violation not to be suspended in termination for cause proceedings. Whether the claimant has a property interest which is then constitutionally protected, in his continued employment, must come from state laws or some independent source, such as the terms of his employment contract. Board of Regents v. Roth, 408 U.S. 564,576. In the context of this case, the provisions of C.G.S. 7-276
governs the plaintiff's right to continued employment. The statute specifically provides for suspension if the board by its regulations so provides: Number 321 of 26 Sec. Acts 934 provides for the Police Commission and its powers and provides therein for the disciplining of any police officer of the City of Naugatuck. All of the authorities that the court has reviewed distinguish between disciplinary suspensions, temporary suspensions pending a hearing and outright terminations. The Supreme Court in Bartlett v. Krause, 209 Conn. 352, 378
distinguished outright terminations from temporary suspension. In this case, since there is a property right involved, is there a violation of that property right when an individual is relieved of duty with full pay. The United States Supreme Court has noted that the due process requirement of a pre suspension hearing may be avoided when an employee is relieved of his duties with full pay, as has occurred in this case. Loudermill v. Cleveland Board of Education, 470 U.s. [U.S.] 532, 84 L.Ed. 494.
Since the plaintiff here was suspended with full pay and benefits, he received all the monetary relief he was entitled to under State laws. Chotkowski v. Personnel Appeal Board,276 Conn. 1, 6.
The second phase of the analysis is whether a right to a hearing prior to suspension as part of a dismissal proceeding existed under the constitution as of the time of the suspension herein. a [A] constitutional right may arise from the text of the constitution as interpreted by the court, or out of substantive laws of the state protected by the due process clause of the 14th amendment. See Washington v. Starke, 626 F. Sup. 1149,1153.
A review of the substantial majority of jurisdictions which addressed the issue appear to follow the rule that the suspension of an officer pending a determination of alleged misconduct is accepted as fair and necessary. CT Page 3957
If the claim is that there is a constitutional right to be free from suspension pending a dismissal proceeding, which involves a hearing procedure, the court is not aware of any such contextured right within the constitution or by any decision of the Supreme Court of this state or the Federal Supreme Court. The plaintiff has failed by all of the evidence to establish a constitutionally protected property interest when as a part of a disciplinary proceeding he is temporarily suspended with full pay and benefits.
In the next analysis, the court must look to determine if the plaintiff was somehow deprived of a liberty right in that the charges created a stigma or damage to the plaintiff's reputation. The Supreme Court noted that where there is a charge that may damage the standing of the office holder in the community, a hearing would be essential. Board of Regents v. Roth, 408 U.S. 570, 571.
The plaintiff had a hearing on all the charges which concluded in August 1989 and at which the plaintiff was exonerated and returned to duty. A liberty interest is not implicated when the respondent is given an opportunity to address the charges and is not deprived of the pay and benefits pending the hearing.
The issue of equal protection must be addressed in the context of the claim that the plaintiff was singled out for investigation and referral for charges. The plaintiff claims he was discriminated against because he was charged with violations while others were not. The ability of government officials to deal with police officers in an individual or differentiating manner is recognized as within the parameters of governmental discretion.
The legitimate objective of maintaining an effective police force may require the discretion to make individual judgments and the equal protection clause is no barrier to legitimate exercise of such discretion.
D'Aguista v. Washington, 540 F. Sup. 594 at 652; Busche v. Burkee, 649 F.2d 509.
Plaintiff was the Administrative Captain in the department and his responsibility for proper administration was commensurate with his rank. Furthermore, the evidence clearly established CT Page 3958 that the Chief of the Department, Chief Clisham, was at the time subject of disciplinary proceedings for alleged violations. (See also Clisham v. Board of Police Commissioners,223 Conn. 354) So any claim of disparate classification cannot stand in that more than one officer was under investigation for violation of Department procedures.
The degree of deference to a governmental classification is very wide. A court will not disturb the classification if any state of facts can reasonably sustain the classification even if it is fairly debatable. N.Y. State Association of Career Schools v. State Education Dept. of the State of N.Y.,749 F. Sup. 1264. Thus, even if the Police Commission articulated no basis for their actions, all that is required is any rational explanation for the Police Commission conduct. Guerra v. Scruggs, 942 F.2d 270, 279.
The jury could not find from the proven facts that there was any disparate classification as a matter of law.
The defendants in this case raised the defense of immunity to all of the claims of the complaint. On the motion to set aside, the court must entertain every possible favorable inference from the evidence adduced in order to determine if any reading of the facts applied to the law can sustain the jury verdict.
The Connecticut Supreme Court has cited Butz v. Economow,438 U.S. 478, 511-12 (1978) for the requirements of judicial prosecutional immunity. See DeLaurentis v. New Haven, 220 Conn. 225.
The court must start from the position that the Naugatuck Police Commission and the individual members thereof are acting in a quasi-judicial capacity when the board undertook disciplinary proceedings against the plaintiff. Petrowski v. Norwich Free Academy, 199 Conn. 231, 234; Clisham v. Board of Police Commissioners, 223 Conn. 354, 361.
The two requirements for a grant of immunity are the need of a shield against the crippling effect of unlimited vexatious suit actions and the presence of safeguards against prosecutional abuse. DeLaurentis v. New Haven, 220 Conn. 225, 245. In matters of the administration of a police department, the mayor and members of the Police Commission need to be protected from CT Page 3959 unlimited retaliatory actions.
The second element was whether the ultimate decision was granted to an unbiased or neutral party or parties such that there is the existence of impartiality on the part of those who function in judicial or quasi-judicial proceedings. Rado v. Board of Education, 216 Conn. 541.
In the case here, the ultimate decision process rested in the board of Police Commissioners. The defendants, Terry Buckmiller, Mayor and Rocco DeCarlo took no part in the adjudicative procedure disqualifying themselves from the hearing process. The plaintiff claimed that the remaining members were biased and had a pre-disposition against the plaintiff. Any analysis that the due process rights are violated must be balanced against the governmental interest in existing procedures, vis a vis the risk of erroneous deprivation of a private interest.
It has been generally recognized, however, that due process does not require that members of administrative agencies adhere in all respects to the exalted standards of impartiality applicable to the judiciary. Schweiker v. McClure, 456 U.S. 188,197 N.11, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). "The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." Florasynth, Inc. v. Pickholz,750 F.2d 171, 173-74 (2d Cir. 1984); see Petrowski v. Norwich Free Academy, supra, 237. A presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudicator rests upon the one seeking disqualification. Schweiker v. McClure, supra, 195-96; Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456,43 L.Ed.2d 712 (1975). To overcome the presumption, the plaintiff in this case must demonstrate actual bias, rather than mere potential bias.
There is, in addition, a presumption that administrative board members acting in an adjudicative capacity are not biased. Jutkowitz v. Department of Health Services, 220 Conn. 86, 100.
Once the determination is made that as a matter of law, the board was acting in respect of a quasi-judicial body, immunity attaches. In this case, the jury could not as a matter of law determine otherwise. CT Page 3960
Thus, if the safeguards enunciated in DeLaurentis v. New Haven are satisfied as a matter of law, the prosecutional and judicial immunity attaches to the defendants' acts in the present case. The immunity so found as applied to Count Three shields the defendants from any liability for any action taken pursuant to the removal process. This includes all of the steps, including the suspension with pay. Once it is determined that a proceeding is quasi-judicial in nature, the privilege of immunity extends to every step of the proceeding until final disposition. Petyan v. Ellis, 200 Conn. 243, 246.
Under the same theory of immunity, any statements made by the defendants during the course of the notice to the plaintiff are privileged under the Petyan rule. The defendant cannot be held liable for any claims of defamation, emotional distress or other alleged torts flowing from the quasi-judicial process. Kelley v. Bonney, 221 Conn. 549, 566. The privilege which is generally applied to pertinent statements made in judicial proceedings applies equally to those proceedings which are quasi-judicial. Mack v. Chicago Rock Island Pacific R.R. Co., 454 F. 131, 133 cite in Kelly, v. Bonney, supra at 566.
Under the facts as proved relative to counts three, four and six, the jury could not have found a quasi-judicial function which was not immune.
The verdict as the Counts 3, 4 and 6 are set aside and judgment is entered for the defendants as to all defendants.
The court's ruling on defendants' motion to set aside being dispositive of the matter the court makes no ruling on defendants' motions for directed verdict or motion to dismiss, which motions the court previously reserved decision.
/s/ Kocay KOCAY, J.