[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff's, John J. O'Dea and Thomas N. Tryforos, appeal from a decision rendered by the defendant, the environmental protection board of the city of Stamford (board),[1] granting a permit with conditions to the defendant, Millspring Associates (Millspring), to develop property located on the north side of Mill Road (the premises) pursuant to the Stamford inland wetlands and watercourse regulations.[2]
The plaintiff's filed an appeal to the Superior Court[3] on September 23, 1999, after the board approved the permit application of Millspring to conduct certain regulated activities upon the premises.[4] (Appeal, ¶ 5, 6, 7; Return of Record [ROR], Exh. 4.) Millspring sought to construct on the premises a new four-bedroom single-family dwelling with an associated driveway, septic system, and site grading proximate to designated wetlands and watercourses on property within the drinking supply watershed of the East Branch Mianus River.[5] (Appeal, ¶ 5; ROR, Exh. 12, 13.) A public meeting on the permit application was conducted on September 23, 1999.[6] (ROR, Exh. 2.) On the same day, the board unanimously voted to grant Millspring's permit application. (ROR, Exh. 2.) The plaintiff's now appeal from the board's decision to the Superior Court.
Furthermore, on April 27, 2000, Rebecca KaufiThan Piotrowski (Piotrowski) moved to intervene as a party plaintiff in the appeal. On July 5, 2000, the court, Karazin, J., granted Piotrowski's motion on the ground that Piotrowski had considerable interest in the appeal as an abutting land owner.[7]
General Statutes § 22a-43 (a)[8] provides that any person aggrieved by a decision of an inland wetlands and watercourse agency decision may take an appeal to the Superior Court pursuant to General Statutes § 8-8.[9] "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) BridgeportBowl-O-Rama, Inc. v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). The plaintiff's allege that they are aggrieved as they own property which abuts that of the premises or are within a radius of ninety feet of the wetland or watercourse involved in the decision. (Appeal, ¶ 8.) See General Statutes § 22a-43 (a).[10] Consequently, the court finds that the plaintiff's are statutorily aggrieved for the purposes of this appeal.[11]
CT Page 5883
General Statutes § 22a-43 (a) states in pertinent part that the appeal may be taken "within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action. . . ." Furthermore, the statute provides that "[n]otice of such appeal shall be served upon the inland wetlands agency and the commissioner." Pursuant to General Statutes § 8-8 (b), "[an] appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) of the statute further provides that service of process for an appeal "shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the board's decision was published in the Stamford Advocate on October 1, 1999. (ROR, Exh. 1.) On October 15, 1999, the plaintiffs' appeal was commenced by service of process on the Stamford town clerk, the commissioner of the department of environmental protection, as well as on the chairman of the environmental protection board of the city of Stamford. This court, therefore, finds that service of process was timely commenced on the appropriate parties pursuant to General Statutes §8-8 (b) and (e).
"In reviewing an inland wetlands agency decision . . . the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . In adhering to this substantial evidence standard for an inland wetlands agency appeal, [the Connecticut Supreme Court has] held that it is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. The reviewing court instead must search the record of the hearings before that commission to determine if there is an adequate basis for its decision." (Citations omitted; internal quotation marks omitted.) Samperi v. Inland Wetlands Agency, 226 Conn. 579,587-89, 628 A.2d 1286 (1993).
"In challenging an administrative agency action, the plaintiff has the burden of proof [T]he plaintiff must establish that substantial evidence CT Page 5884 does not exist in the record as a whole to support the agency's decision." (Citations omitted.) Id., 587. The Superior Court's "ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.)Peters v. Inland Wetlands Commission, Bristol, Superior Court, judicial district of New Britain, Docket No. 049814 (January 21, 2000, Hartmere, J.), citing Dolgner v. Alander, 237 Conn. 272, 280, 676 A.2d 865 (1996).
As a preliminary matter, the court will address the issues involving the intervening plaintiff, Piotrowski. On August 18, 2000, the plaintiff's disclosed their intent to have Piotrowski testify as an expert at trial. In response, the defendants filed motions in limine on the ground that Piotrowski could not testify as it would alter the existing administrative record under review by the Superior Court.[12] On September 27, 2000, this court granted the defendants' motions in limine on this ground.
At the November 17, 2000, aggrievement hearing conducted by this court, Piotrowski testified that despite having informed the board of her desire to be notified of upcoming public meetings or hearings on the application, she was unaware of the rescheduled September 23, 1999, public meeting conducted by the board. (ROR, Exh. 8.) Piotrowski asked, therefore, that pursuant to General Statutes § 1-227,[13] the appeal be remanded. The board admitted to this court that due to an oversight, Piotrowski did not get notice of the rescheduled public meeting. (board memorandum (2/2/01), p. 1.) Consequently, an issue raised at the hearing, an issue which is now before this court, is whether the Superior Court has jurisdiction to hear the lack of notice issue when Piotrowski first did not exhaust her administrative remedies by filing an appeal to the Freedom of Information Commission (FOIC).
Piotrowski argues that while General Statutes § 1-206 (c)[14]
creates a remedy for the failure to provide proper notice, there is no statutory language in the Freedom of Information Act which states that the exclusive remedy for the failure to provide notice is to appeal to the FOIC. Piotrowski contends that General Statutes § 8-8 sets out the procedures to be followed in an administrative appeal and, therefore, pursuant to General Statutes § 8-8 (r),[15] Piotrowski has two years from the date of the Board's decision to file an appeal. See Piotrowski memorandum (2/2/01).[16] The defendants respond that Piotrowski failed to exhaust her administrative remedy and, therefore, this court lacks jurisdiction to remand this appeal. See board memorandum (2/2/01); commissioner of environmental protection memorandum (2/2/01).
"It is a settled principle of administrative law that if an adequate CT Page 5885 administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities Service Co.,254 Conn. 1, 11-12, 756 A.2d 262 (2000), see, e.g. Housing Authority v.Papandrea, 222 Conn. 414, 420, 610 A.2d 637 (1992); Cannata v. Dept. ofEnvironmental Protection, 215 Conn. 616, 622, 577 A.2d 1017 (1990);Connecticut Life Health Ins. Guaranty Assn. v. Jackson, 173 Conn. 352,358-59, 377 A.2d 1099 (1977). The Connecticut Supreme Court has "frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities Service Co., supra, 12; see, e.g. Norwich v. Lebanon, 200 Conn. 697, 708, 513 A.2d 77 (1986);Cannata v. Dept. of Environmental Protection, supra, 623. "[B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiffi['s] claim." (Internal quotation marks omitted.) FishUnlimited v. Northeast Utilities Service Co., supra, 12.
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . In addition, the administrative agency may be able to resolve the issues, making judicial review unnecessary. As the United States Supreme Court has stated, [a] complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. McKart v. UnitedStates, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194
(1969)." (Citations omitted; internal quotation marks omitted.) FishUnlimited v. Northeast Utilities Service Co., supra, 254 Conn. 12-13. "The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . [W]e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate. In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed." (Citations omitted; internal quotation marks omitted.) Id., 13. "An administrative remedy is futile or inadequate if the agency lacks authority to grant the requested relief" Payne v. Fairfield HillsHospital, 215 Conn. 675, 680 n. 3, 577 A.2d 1025 (1990). CT Page 5886
This court finds that Piotrowski failed to exhaust her administrative remedy by failing to appeal to the FOIC as required under General Statutes § 1-206 (c).[17] See Stafford Higgins Industries, Inc. v.City of Norwalk, Superior Court, judicial district of Fairfield, Docket No. 317449 (March 10, 1997, Levin, J.) (18 Conn.L.Rptr. 605), aff'd in part on other grounds, rev'd in part on other grounds, 245 Conn. 551,715 A.2d 46 (1998) ("Because the plaintiff's did not first appeal the alleged violation of the Freedom of Information Act to the [f]reedom of [i]nformation [c]ommission, this court does not have jurisdiction to entertain this issue.") Furthermore, this court finds that the present case does not fit into any exception to this rule. It would not have been futile or inadequate for Piotrowski first to appeal to the FOIC, as the FOIC has the authority under General Statutes § 1-206
(b)(2)[18] to declare the actions taken at the public meeting null and void. Consequently, this court will not address the merits of Piotrowski's "lack of notice" argument.
The court now will address the merits of the plaintiffs' appeal. The board unanimously granted Millspring's permit application based on the findings of the September 21, 1999, revised agenda summary report of David Emerson (Emerson revised report), the executive director of the environmental protection board.[19] (ROR, Exh. 2, 6.) The plaintiff's appeal on the ground that the board acted illegally, arbitrarily and in abuse of its discretion when it approved the permit. (Appeal, 6 9.) Specifically, the plaintiff's allege that the board: approved a proposed activity which is significantly more intrusive and consumptive of site resources than a prior development proposal which was denied; (Appeal, ¶ 9(a)); failed to give proper notice of meetings and hearings to interested parties; (Appeal, ¶ 9(b)); granted the permit application based on an agenda summary report which was inexplicably revised; (Appeal, ¶ 9(c)); granted the permit application without a proper exploration of alternatives to the proposed conduct; (Appeal, ¶ 9 (d)); granted the permit application without adequately taking into consideration the character or interference with the public safety and health which will result from the applicant's intended activities; (Appeal, ¶ 9(e)); granted the permit application without making a finding that a feasible and prudent alternative did not exist. (Appeal, ¶ 9(f)).
Furthermore, the plaintiffs' argue that their appeal should be sustained on the grounds that the board: failed to give proper notice of its application as required under the board's regulations; failed to hold a public hearing on the subject application; failed to publish notice of its acceptance of the subject application; had no discretion to approve the subject application in that it did not act on said application within CT Page 5887 the time frame required by law; failed to state upon the record the reason for its decision; and granted the permit despite the applicant's failure to contain the minimum information required under the board's regulations. See Plaintiffs' memorandum (3/8/00).
The plaintiff's argue that pursuant to General Statutes § 22a-42a
(d)(1),[20] the board was required to state upon the record its reasons for granting the permit; (Plaintiffs' memorandum (3/8/00), p. 16.); and contend that the same requirement is found under § 6.1 of the inland wetlands and watercourse regulations.[21] Id. The plaintiff's contend that the board failed to state the reasons for its decision in the minutes of the September 23, 1999, public meeting (public meeting); (ROR, Exh. 2); in the permit itself, (ROR, Exh. 4); in the legal notice published on October 1, 1999; (ROR, Exh. 1); or anywhere else in the record. Id., 16-17. The plaintiff's conclude, therefore, that the board did not meet the statutory requirement of stating the reasons for its decision on the record and, consequently, the plaintiffs' appeal must be sustained on this ground. Id., 17. The board responds that the grounds for its decision were clearly stated in the minutes of the public meeting and are based on the findings in the Emerson revised report. (ROR, Exh. 2; board memorandum (4/3/00), pp. 22-23.)
The court notes that it cannot sustain the plaintiffs' appeal merely because the board failed to state its reasons for the decision on the record. This court must review the record and determine whether there is substantial evidence on the record for the board to reach its decision. See Samperi v. Inland Wetlands Agency supra, 226 Conn. 587-89. In this case, the board unanimously voted "to adopt the findings of the [Emerson] Agenda Summary Report dated September 21, 1999, and Approve the application with the conditions listed." (ROR, Exh. 2, p. 6.)
The court observes that Millspring filed a permit application with the board in May 1999. (ROR, Exh. 13.) On August 12, 1999, Emerson's agenda summary report recommended that the board deny the 1999 application. (ROR, Exh. 9.) In August 1999, Millspring revised his application and attached the expert report of Judith Slayback (Slayback). Slayback, an environmental consultant, was hired by Millspring to provide an environmental assessment report as part of Millspring's revised application. (ROR, Exh. 7.) On September 21, 1999, Emerson revised his agenda summary report. (ROR, Exh. 6.)
The Emerson revised report provides an overview of the proposed application as well as the application's prior history with the board. (ROR, Exh. 6, p. 1.) Moreover, the report provides that "[i]n response to the prior Agenda Summary report [of August 12, 1999], the applicant has undertaken to incorporate design and other changes into the development CT Page 5888 proposal in an effort to set it apart from the earlier proposals."[22]
Furthermore, the report states that "[t]he current proposal is a significantly more well-crafted design that can be reasonably be [sic] expected to be implemented as designed." (ROR, Exh. 6, p. 2.) The report further sets forth the criteria for judging permit applications as found in § 7.5(d) of the inland wetlands and watercourse regulations.[23] (ROR, Exh. 6, p. 2.) The report concludes with a section entitled "Recommendations" which provides that the board has two options. One option is a denial of the application, based upon a determination of various potential adverse impacts resulting from the project. The second option is an approval, with conditions. (ROR, Exh. 6, p. 3.)
While the Emerson revised report states that the current proposal is "more well-crafted" and "can reasonably be expected to be implemented as designed," the report makes no findings as to the mandatory criteria set forth in § 7.5(d) of the inland wetlands and watercourse regulations. In fact, Emerson's "recommendations" conclude that if the board grants the permit it may do so "[u]pon a determination by the Board that the site is suitable for development as proposed, that alternatives having less of an impact are not available, and that the construction will not result in significant environmental impacts, a loss of irreplaceable resources, adverse impacts drainage or adjoining properties or reduced productivity . . ." (Emphasis added.) (ROR, Exh. 6, p. 3.) The record is devoid of any evidence that the board made such a determination. This court finds that the Emerson revised report merely set forth recommendations and criteria for the board to apply to the proposed activities considered in this application prior to rendering its decision. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Emphasis added; internal quotation marks omitted.) Cadlerock Properties v.Commissioner, 253 Conn. 661, 676, 757 A.2d 1 (2000), cert. denied,121 S.Ct. 1089, 148 L.E.2d 963 (2001). To the extent that the board adapted the "findings and recommendations" of Emerson's revised report in approving the application, the court finds that the board's decision is not based upon substantial record evidence. Accordingly, the plaintiffs' appeal is sustained on this ground.
The plaintiff's also argue that the board should have held a public hearing on the permit application pursuant to General Statutes §22a-42a (c)(1)[24] because: (1) the application has a significant impact on the inland wetlands or watercourse; and (2) a public hearing would be in the public interest. (Plaintiffs' memorandum (3/8/00), pp. 11-13.) The board responds that under General Statutes § 22a-42a (c)(1) it is CT Page 5889 within the board's discretion as to whether to hold a public hearing. (board memorandum (4/3/00), p. 21.)
The court recognizes that, pursuant to General Statutes § 22a-42a
(c)(1),[25] the board is not required to hold a public hearing on a permit application unless it determines that the proposed activity may have a significant impact on wetlands or watercourses or the agency finds a public hearing would be in the public interest. However, this court is persuaded by the plaintiffs' argument and finds that, in light of the surrounding circumstances of this case, the board should have held a public hearing. As previously discussed, in 1995, a similar permit application by Millspring was denied by the board because it was determined that it had a significant impact on the wetland or watercourse. (ROR, Exh. 6, p. 1.) In May of 1999, Millspring filed another permit application that was more expansive than the original application. (ROR, Exh. 9, p. 2.) Subsequently, Emerson's August 12, 1999, agenda summary report recommended that the 1999 application be denied. (ROB., Exh. 9.) In August 1999, Millspring filed a revised application accompanied by the expert report of Judith Slayback. (ROR, Exh. 7.) On September 21, 1999, Emerson revised the agenda summary report recommending that the application could reasonably be implemented as designed. (ROR, Exh. 6.) The court notes that the September 16, 1999, public meeting was cancelled due to inclement weather and Emerson's revised report of September 21, 1999 was completed only two days before the September 23, 1999, public meeting with a completely different recommendation. (ROR, Exh. 6.) This court finds, therefore, that the record reveals that the proposed activities in the application may have involved a "significant impact" on the inland or wetland watercourse. See General Statutes § 22a-42a (c)(1). Consequently, the board should have held a public hearing on the application.
Moreover, General Statutes § 22a-42a (c)(1)[26] states that the agency should not hold a public hearing on the application "unless . . . the agency finds that a public hearing regarding such application would be in the public interest."[27] (Emphasis added.) This court recognizes that it is within the board's discretion as to whether to hold a public hearing based upon "the public interest." In the present case, however, the plaintiff's, as well as intervening plaintiff Piotrowski, expressed their interest in the matter to the board both in writing and at the public meeting. (ROR, Exh. 2, 5, 8.) While hearings before administrative agencies are informal and are conducted without regard to the strict rules of evidence; see Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 536, 525 A.2d 940 (1987); the Connecticut Supreme Court has recognized a common-law right to due process and fundamental fairness in administrative hearings. See Grimes v. Conservation Commission,243 Conn. 266, 273, 703 A.2d 101 (1997). This court is hard pressed to find CT Page 5890 that in the interest of due process and fundamental fairness, as well as pursuant to the statutory language of General Statutes § 22a-42a (c) (1),[28] that a public hearing was not in the public interest given the expressed concerns of interested parties.
In conclusion, the court finds that there is not substantial evidence on the record to support the board's decision. Additionally, the court finds that due to public interest in the permit application, the board should have held a public hearing on the matter. Consequently, the court need not address any of the plaintiffs' other grounds. Accordingly, for the foregoing reasons, the court hereby sustains the plaintiffs' appeal and declares the decision of the board to be null and void.