## FISH UNLIMITED ET AL. *v.* NORTHEAST UTILITIES SERVICE COMPANY ET AL.
## (SC 16266)

Borden, Norcott, Katz, Palmer and Blue, Js.

Argued May 23—officially released August 1, 2000

1

*Nancy Burton*, for the appellants (plaintiffs).

*Elizabeth C. Barton*, with whom were *Harold M. Blinderman* and, on the brief, *Donald C. Mahoney*, for the appellees (defendants).

*Opinion*

KATZ, J. The dispositive issue in this appeal is whether the plaintiffs, who opposed the restart of a nuclear generating unit, were excused from having to exhaust all administrative remedies with the department of environmental protection (department) before seeking injunctive relief in the Superior Court because the administrative remedies available to them were futile or inadequate.

The plaintiffs[1] brought this action in the trial court seeking to enjoin the restart of a nuclear generating unit (unit 2), owned and operated by the named defendant, Northeast Utilities Service Company.[2] The defendants moved to dismiss the action on jurisdictional grounds, claiming that the plaintiffs had failed to exhaust their administrative remedies with the department, and that the department had primary jurisdiction over the issues raised in the plaintiffs' complaint. The trial court, *Hon. Norris L. O'Neill*, judge trial referee, denied the defendants' motion. Thereafter, the trial court, *Hon. Robert J. Hale*, judge trial referee, granted a temporary restraining order enjoining the restart of unit 2, pending a ruling on the plaintiffs' application for a temporary and permanent injunction. Judge Hale ultimately rendered judgment for the defendants and dissolved the temporary restraining order. The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We now vacate the judgment and remand the case to the trial court with direction to render judgment dismissing the action.

The following facts are pertinent to this appeal. The Millstone Nuclear Power Generating Station (Millstone) consists of three nuclear power units. Each unit is

[1] The plaintiffs in this case are: Fish Unlimited, a national clean water fisheries conservation organization based in Shelter Island, New York, with a satellite office in Waterford, Connecticut; three environmental interest groups, namely, Don't Waste Connecticut, based in New Haven, Connecticut, STAR Foundation, based in East Hampton, New York, and North Fork Environmental Council, Inc., based in Mattituck, New York; and Fred Thiele, a New York State assemblyman, of Sag Harbor, New York.

[2] Northeast Utilities Service Company owns and operates three nuclear generating units that comprise the Millstone Nuclear Power Generating Station in Waterford, hereinafter referred to as unit 1, unit 2 and unit 3. Northeast Utilities Service Company is the parent corporation of the other defendant in this case, Northeast Nuclear Energy Company, which is involved in the management and operation of units 1, 2 and 3.

equipped with a "once-through condenser cooling system" that draws large volumes of seawater from Niantic Bay into the units through an intake structure. The water is used to cool the units and is later discharged into Long Island Sound. When the present action was brought on March 11, 1999, units 1 and 2 had been shut down due to safety violations unrelated to the once-through cooling system.[3]

The defendants hold a National Pollutant Discharge Elimination System (NPDES) permit, authorizing the use of the once-through condenser cooler water system for Millstone.[4] In accordance with the provisions of the federal Clean Water Act; see footnote 4 of this opinion; that certain requirements must be satisfied before a permit may be issued or renewed, the defendants' permit contains the express findings made by the department that: (1) the use of a once-through condenser

---

[3] Unit 3 previously had been shut down for safety violations as well. The defendants later, however, received approval to restart unit 3 in June, 1998.

[4] General Statutes § 22a-430 provides in relevant part: "Permit for new discharge. Regulations. Renewal. Special category permits or approvals. Limited delegation. General permits. (a) No person or municipality shall initiate, create, originate or maintain any discharge of water, substance or material into the waters of the state without a permit for such discharge issued by the commissioner. Any person who initiated, created or originated a discharge prior to May 1, 1967, and any municipality which initiated, created or originated a discharge prior to April 10, 1973, for which a permit has not been issued pursuant to this section, shall submit an application for a permit for such discharge on or before July 1, 1987. Application for a permit shall be on a form prescribed by the commissioner, shall include such information as the commissioner may require and shall be accompanied by a fee of twenty-five per cent more than the amount established in regulations in effect on July 1, 1990. On and after July 1, 1991, such fees shall be as prescribed by regulations adopted by the commissioner in accordance with chapter 54. The commissioner shall not issue or renew a permit unless such issuance or renewal is consistent with the provisions of the federal Clean Water Act (33 USC 1251 et seq.). . . ."

Although, pursuant to 33 U.S.C. § 1251, these permits are federal permits issued in accordance with the Clean Water Act, the Administrator of the United States Environmental Protection Agency has delegated authority to the department to administer the permit program for Connecticut.

cooling system adequately ensures the projection and propagation of a balanced indigenous population of marine organisms and wildlife; and (2) the cooling water intake structure at Millstone represents the best available technology for minimizing environmental impacts.[5]

The defendants' permit was issued by the department on December 14, 1992, and was due to expire on December 13, 1997.[6] The defendants submitted a timely permit

[5] Title 33 of the United States Code, § 1326, provides in relevant part: "(a) . . . [W]henever the owner or operator of any such source, after opportunity for public hearing, can demonstrate to the satisfaction of the Administrator (or, if appropriate, the State) that any effluent limitation proposed for the control of the thermal component of any discharge from such source will require effluent limitations more stringent than necessary to assure the projection and propagation of a balanced, indigenous population of shellfish, fish, and wildlife in and on the body of water into which the discharge is to be made, the Administrator (or, if appropriate, the State) may impose an effluent limitation under such sections for such plant, with respect to the thermal component of such discharge (taking into account the interaction of such thermal component with other pollutants), that will assure the protection and propagation of a balanced, indigenous population of shellfish, fish, and wildlife in and on that body of water.

"(b) . . . Any standard . . . applicable to a point source shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact. . . ."

[6] General Statutes § 22a-430 (c) provides: "The permits issued pursuant to this section shall be for a period not to exceed five years, except that any such permit shall be subject to the provisions of section 22a-431. Such permits: (1) Shall specify the manner, nature and volume of discharge; (2) shall require proper operation and maintenance of any pollution abatement facility required by such permit; (3) may be renewable for periods not to exceed five years each in accordance with procedures and requirements established by the commissioner; and (4) shall be subject to such other requirements and restrictions as the commissioner deems necessary to comply fully with the purposes of this chapter, the federal Water Pollution Control Act and the federal Safe Drinking Water Act. An application for a renewal of a permit which expires after January 1, 1985, shall be filed with the commissioner at least one hundred eighty days before the expiration of such permit. The commissioner, at least thirty days before approving or denying an application for renewal of a permit, shall publish once in a newspaper having substantial circulation in the area affected, notice of (A) the name of the applicant; (B) the location, volume, frequency and nature

renewal application with the department on June 7,

of the discharge; (C) the tentative decision on the application, and (D) such additional information the commissioner deems necessary to comply with the federal Clean Water Act (33 USC 1251 et seq.). There shall be a comment period following the public notice during which period interested persons and municipalities may submit written comments. After the comment period, the commissioner shall make a final determination that (i) continuance of the existing discharge would not cause pollution of the waters of the state, in which case he shall renew the permit for such discharge, or (ii) continuance of the existing system to treat the discharge would protect the waters of the state from pollution, in which case he shall renew a permit for such discharge, (iii) the continuance of the existing system to treat the discharge, even with modifications, would not protect the waters of the state from pollution, in which case he shall promptly notify the applicant that its application is denied and the reasons therefor, or (iv) modification of the existing system or installation of a new system would protect the waters of the state from pollution, in which case he shall renew the permit for such discharge. Such renewed permit may include a schedule for the completion of the modification or installation to allow additional time for compliance with the final effluent limitations in the renewed permit provided (I) continuance of the activity producing the discharge is in the public interest; (II) the interim effluent limitations in the renewed permit are no less stringent than the effluent limitations in the previous permit; and (III) the schedule would not be inconsistent with the federal Water Pollution Control Act. No permit shall be renewed unless the commissioner determines that the treatment system adequately protects the waters of the state from pollution. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application for a renewal has not been given a public hearing shall have the right to a hearing and an appeal therefrom in the same manner as provided in sections 22a-436 and 22a-437. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application for a renewal has been given a public hearing shall have the right to appeal as provided in section 22a-437. Any category, type or size of discharge that is exempt from the requirement of notice pursuant to subsection (b) of this section for the approval or denial of a permit shall be exempt from notice for approval or denial of a renewal of such permit. The commissioner may hold a public hearing prior to approving or denying an application for a renewal if in his discretion the public interest will be best served thereby, and he shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. Notice of such hearing shall be published at least thirty days before the hearing in a newspaper having a substantial circulation in the area affected."

We are aware that subsequent to the filing of the renewal application in

1997. That application is still pending. The 1992 permit, however, will remain in effect until the renewal application has been finally resolved by the department. See General Statutes § 4-182 (b).[7] Pursuant to General Statutes § 22a-19, Fish Unlimited has intervened in the proceeding before the department and has requested a hearing on the defendants' application.[8]

this case, Public Acts 1998, No. 98-209, § 1, amended § 22a-430 (b); see footnote 19 of this opinion; and (c). The changes to the statutory provisions were technical in nature and are not relevant to this case. Because the application is still pending, references herein are to the current revision of the statute.

[7] General Statutes § 4-182 provides: "Matters involving licenses. (a) When the grant, denial or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply.

"(b) When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

"(c) No revocation, suspension, annulment or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined."

[8] Pursuant to General Statutes § 22a-19, the remaining plaintiffs may also intervene in the defendants' permit renewal proceeding before the department. That section provides in relevant part: "Administrative proceedings. (a) In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.

Although Fish Unlimited intervened in the defendants' permit renewal proceeding before the department, the plaintiffs brought this action[9] alleging that the once-through condenser cooler water system in place at unit 2 causes "unreasonable pollution, impairment and destruction of the public trust in the air, water and other natural resources of the state within the meaning of . . . General Statutes § 22a-16."[10] Specifically, the plaintiffs maintained that the system contributes significantly to the virtual demise of the winter flounder population in the Niantic River, and to the serious depletion

"(b) In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare."

[9] The present appeal is the second of two cases involving the same or similar parties currently before this court. The other case is *Fish Unlimited* v. *Northeast Utilities Service Co.*, Supreme Court Docket No. 16268, an action brought by Fish Unlimited and seven other plaintiffs pursuant to General Statutes § 22a-16 challenging the validity of the defendants' NPDES permit.

[10] General Statutes § 22a-16 provides: "Action for declaratory and equitable relief against unreasonable pollution. The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

of other aquatic species that are entrained and impinged at the unit 2 intake structure.[11] They also contended that the cooling waters, which are discharged into Long Island Sound as heated effluent, contain toxic contaminants and radioactive waste products that further harm the environment. In addition, the plaintiffs alleged that "[a] feasible and prudent alternative to the once-through condenser cooling system is available consistent with the reasonable requirements of public health, safety and welfare within the meaning of . . . General Statutes § 22a-17."[12] Accordingly, the plaintiffs sought to enjoin the restart of unit 2 and to require conversion of the once-through cooling system to a closed cooling system, which they claimed would reduce substantially the occurrence of larval entrainment. The plaintiffs also

[11] Entrainment occurs when marine organisms pass through the mesh screens through which intake water enters, and thereafter enter the cooling water system. While passing through the plant, these organisms may die before being discharged back into Long Island Sound.

Impingement occurs when juvenile and adult fish become caught against intake screens that protect the cooling system from drawing in flotsam and debris. Fish that become impinged are washed off intake screens by high pressure sprays and may die in the process.

[12] General Statutes § 22a-17 provides: "Defense. Appointment of master or referee. (a) When the plaintiff in any such action has made a prima facie showing that the conduct of the defendant, acting alone, or in combination with others, has, or is reasonably likely unreasonably to pollute, impair or destroy the public trust in the air, water or other natural resources of the state, the defendant may rebut the prima facie showing by the submission of evidence to the contrary. The defendant may also prove, by way of an affirmative defense, that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative to the defendant's conduct and that such conduct is consistent with the reasonable requirements of the public health, safety and welfare. Except as to the aforesaid affirmative defense, nothing in this section shall be construed to affect the principles of burden of proof and weight of the evidence generally applicable in civil actions.

"(b) The court before which such action is brought may appoint a master or referee, who shall be a disinterested person and technically qualified, to take testimony and make a report to the court in the action. The costs of such appointment may be apportioned to the parties if the interests of justice require."

sought an injunction requiring the defendants to install a fish return system, which they claimed would reduce mortality of marine organisms subject to impingement.

On March 22, 1999, the defendants moved to dismiss the complaint, asserting that the plaintiffs had failed to exhaust their administrative remedies before the department, and that the department had primary jurisdiction over the issues raised in the plaintiffs' complaint. That motion was denied by Judge O'Neill on the ground that resort to the available administrative remedies would be futile and inadequate in light of the alleged harms created by the once-through condenser cooler water system because of the imminence of the peak spawning season for winter flounder. The court made no ruling in regard to future motions to dismiss that the defendants might submit after the period of peak spawning season had passed.

Thereafter, a trial commenced before Judge Hale on the plaintiffs' application for a temporary injunction. On April 20, 1999, the plaintiffs filed an application for a temporary restraining order to enjoin the restart of unit 2 until after the trial court had ruled on the application for a temporary injunction. Judge Hale granted the plaintiffs' application for a temporary restraining order, pending completion and presentation of all the evidence. After thirteen days of testimony, Judge Hale denied the plaintiffs' application for temporary and permanent injunctive relief, and dissolved the temporary restraining order.[13]

On appeal, the plaintiffs claim that Judge Hale improperly concluded that the plaintiffs were not entitled: (1) to present rebuttal testimony; (2) to present summations and closing argument; and (3) to temporary

---

[13] On May 12, 1999, the plaintiffs moved for reargument and reconsideration seeking the opportunity to present rebuttal testimony. Their motion was denied.

and permanent injunctive relief. The defendants dispute the plaintiffs' claims and assert, as an alternative ground for affirmance, that the trial court lacked jurisdiction to adjudicate the plaintiffs' claims because they had failed to exhaust their administrative remedies before the department, and because the department has primary jurisdiction over the issues raised in the plaintiffs' complaint. We agree with the defendants' alternative argument, namely, that the plaintiffs failed to exhaust their administrative remedies and, therefore, we vacate the judgment of the trial court.[14]

The defendants contend that the plaintiffs' claims should have been dismissed by the trial court on jurisdictional grounds because the plaintiffs failed to exhaust their administrative remedies. Specifically, the defendants maintain that the remedies sought by the plaintiffs were available through the permit renewal proceeding pending before the department.[15] The plaintiffs, however, assert that under the circumstances of this case, they were not required to exhaust their administrative remedies because recourse to the administrative remedies would have been futile and inadequate.

"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain juris-

---

[14] In light of our conclusion that the trial court should have dismissed the plaintiffs' complaint for lack of jurisdiction, we need not reach the merits of the claims raised by the plaintiffs on appeal.

[15] As stated previously, the defendants also assert in the alternative that the plaintiffs' claims should be dismissed under the doctrine of primary jurisdiction. The doctrine of primary jurisdiction, however, arises in cases in which a plaintiff, in the absence of a pending administrative proceeding, invokes the original jurisdiction of the court. *Sharkey* v. *Stamford*, 196 Conn. 253, 255–56, 492 A.2d 171 (1985). In this case, Fish Unlimited has intervened in the defendants' permit renewal proceeding before the department, and the remaining plaintiffs are free to do the same. See footnote 8 of this opinion. Therefore, because an administrative action is pending, the primary jurisdiction doctrine does not apply.

diction to act in the matter." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, 222 Conn. 414, 420, 610, A.2d 637 (1992); *Cannata* v. *Dept. of Environmental Protection*, 215 Conn. 616, 622, 577 A.2d 1017 (1990); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 358–59, 377 A.2d 1099 (1977). "We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." *Norwich* v. *Lebanon*, 200 Conn. 697, 708, 513 A.2d 77 (1986); *Cannata* v. *Dept. of Environmental Protection,* supra, 215 Conn. 623. "[B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff[s'] claim." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, supra, 420; *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 556, 529 A.2d 666 (1987); see also *Concerned Citizens of Sterling* v. *Sterling* supra, 557 ("whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to [its] previous rulings").

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, supra, 222 Conn. 420; *Concerned Citizens of Sterling* v. *Sterling*, supra, 204 Conn. 557. "The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, supra, 420; *Concerned Citizens of Sterling* v. *Sterling*, supra, 556.

In addition, the administrative agency may be able to resolve the issues, making judicial review unnecessary. As the United States Supreme Court has stated, [a] complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. *McKart* v. *United States*, 395 U.S. 185, 195, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969)." (Internal quotation marks omitted.) *Housing Authority* v. *Papandrea*, supra, 420–21; *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 351–52, 542 A.2d 672 (1988).

"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions." *McKart* v. *United States*, supra, 395 U.S. 193; *Johnson* v. *Dept. of Public Health*, 48 Conn. App. 102, 112, 710 A.2d 176 (1998). "[W]e have recognized such exceptions only infrequently and only for narrowly defined purposes"; (internal quotation marks omitted) *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 561, 630 A.2d 1304 (1993); *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 353; such as when recourse to the administrative remedy would be futile or inadequate. In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed. See, e.g., *Simko* v. *Ervin*, 234 Conn. 498, 507, 661 A.2d 1018 (1995) (plaintiffs' mere suspicion of bias on part of defendant, without more, not sufficient to excuse them, on ground of futility, from exhaustion requirement); *O & G Industries Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995) (actual bias, rather than mere potential bias, of administrative body renders resort to administrative remedies futile); *Polymer Resources, Ltd.* v. *Keeney*, supra, 561 (mere conclusory assertion that agency will not reconsider decision does not excuse compliance, on basis of futility, with exhaustion requirement); *Housing Authority* v. *Papandrea*, supra, 222 Conn. 430 (fact

that commissioner previously indicated how he would decide plaintiff's claim did not excuse compliance, on ground of futility, with exhaustion requirement); *Concerned Citizens of Sterling* v. *Sterling*, supra, 204 Conn. 557–60 (futility is more than mere allegation that administrative agency might not grant relief requested).

The plaintiffs recognize the exhaustion doctrine, but assert that they are excused from compliance because the injunctive relief they seek was not available through the administrative process. Specifically, they contend that the permit renewal proceeding was inadequate because: (1) it would not redress the environmental problems associated with the use of a once-through cooling system; and (2) it is unlikely that the department will conduct a hearing on the matter in the foreseeable future, thus causing further harm to the winter flounder population and the waters of Long Island Sound. Although we agree that a party is not required to exhaust an administrative remedy when that remedy necessarily will be futile, we disagree with the plaintiffs' characterization of their administrative remedy in this case.

An administrative remedy is futile or inadequate if the agency is without authority to grant the relief requested. *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 625. The department in this case, however, had the authority to grant the plaintiffs' requested relief during the permit renewal proceeding in which Fish Unlimited had intervened.

First, pursuant to § 22a-430 (a),[16] before renewing the defendants' permit, the department must review all of its prior determinations that the defendants' cooling system is consistent with the provisions of the federal Clean Water Act, which requires that the cooling water intake structure represent "the best available technology for minimizing environmental impacts." See 33

---

[16] See footnote 4 of this opinion.

U.S.C. § 1326 (b).[17] Thus, the department will evaluate the environmental problems associated with the use of a once-through cooling water system. The department also will determine whether these problems warrant the conversion of unit 2 to a closed cooling water system and whether the installation of a fish return system is needed. Adjudication of the claims raised in the plaintiffs' complaint requires the trial court to make the same determinations.

Second, General Statutes § 22a-7[18] provides the department with broad authority to issue cease and desist orders, with which it effectively could enjoin the defendants from restarting unit 2. Third, § 22a-430 (b)[19]

[17] See footnote 5 of this opinion.

[18] General Statutes § 22a-7 provides in relevant part: "Cease and desist orders. Service. Hearings. Injunctions. (a) The commissioner, whenever he finds after investigation that any person is causing, engaging in or maintaining, or is about to cause, engage in or maintain, any condition or activity which, in his judgment, will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 441, 442, 445, 446a, 446c, 446d, 446j and 446k, or whenever he finds after investigation that there is a violation of the terms and conditions of a permit issued by him that is in his judgment substantial and continuous and it appears prejudicial to the interests of the people of the state to delay action until an opportunity for a hearing can be provided, or whenever he finds after investigation that any person is conducting, has conducted, or is about to conduct an activity which will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 441, 442, 445, 446a, 446c, 446d, 446j and 446k for which a license, as defined in section 4-166, is required under the provisions of chapter 440, 441, 442, 445, 446a, 446c, 446d, 446j or 446k without obtaining such license, may, without prior hearing, issue a cease and desist order in writing to such person to discontinue, abate or alleviate such condition or activity. . . ."

[19] General Statutes § 22a-430 (b) provides: "The commissioner, at least thirty days before approving or denying a permit application for a discharge, shall publish once in a newspaper having a substantial circulation in the affected area notice of (1) the name of the applicant; (2) the location, volume, frequency and nature of the discharge; (3) the tentative decision on the application, and (4) additional information the commissioner deems necessary to comply with the federal Clean Water Act (33 USC 1251 et seq.). There shall be a comment period following the public notice during which

requires the department to provide public notice of

period interested persons and municipalities may submit written comments. After the comment period, the commissioner shall make a final determination either that (A) such discharge would not cause pollution of any of the waters of the state, in which case he shall issue a permit for such discharge, or (B) after giving due regard to any proposed system to treat the discharge, that such discharge would cause pollution of any of the waters of the state, in which case he shall deny the application and notify the applicant of such denial and the reasons therefor, or (C) the proposed system to treat such discharge will protect the waters of the state from pollution, in which case he shall, except as provided pursuant to subsection (j) of this section, require the applicant to submit plans and specifications and such other information as he may require and shall impose such additional conditions as may be required to protect such water, and if the commissioner finds that the proposed system to treat the discharge, as described by the plans and specifications or such other information as may be required by the commissioner pursuant to subsection (j) of this section, will protect the waters of the state from pollution, he shall notify the applicant of his approval and, when such applicant has installed such system, in full compliance with the approval thereof, the commissioner shall issue a permit for such discharge, or (D) the proposed system to treat such discharge, as described by the plans and specifications, will not protect the waters of the state, in which case he shall promptly notify the applicant that its application is denied and the reasons therefor. The commissioner shall, by regulations adopted in accordance with the provisions of chapter 54, establish procedures, criteria and standards as appropriate for determining if (i) a discharge would cause pollution to the waters of the state and (ii) a treatment system is adequate to protect the waters of the state from pollution. Such procedures, criteria and standards may include schedules of activities, prohibitions of practices, operating and maintenance procedures, management practices and other measures to prevent or reduce pollution of the waters of the state, provided the commissioner in adopting such procedures, criteria and standards shall consider best management practices. The regulations shall specify the circumstances under which procedures, criteria and standards for activities other than treatment will be required. For the purposes of this section, 'best management practices' means those practices which reduce the discharge of waste into the waters of the state and which have been determined by the commissioner to be acceptable based on, but not limited to, technical, economic and institutional feasibility. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner where an application has not been given a public hearing shall have the right to a hearing and an appeal therefrom in the same manner as provided in sections 22a-436 and 22a-437. Any applicant, or in the case of a permit issued pursuant to the federal Water Pollution Control Act, any person or municipality, who is aggrieved by a decision of the commissioner

its tentative determination regarding a permit renewal application and to provide for a period of public comment before a final determination is made on the application. Pursuant to that same section, the commissioner of environmental protection "may hold a public hearing prior to approving or denying any application if in his discretion the public interest will be served thereby, and he shall hold a hearing upon receipt of a petition signed by at least twenty-five persons." General Statutes § 22a-430 (b). Finally, General Statutes § 22a-437 provides that any person aggrieved by a decision of the department to grant or deny a permit pursuant to § 22a-430, has the right, after a hearing, to appeal the final determination of the department to the Superior Court.[20] We conclude, therefore, that the plaintiffs had the opportunity to raise the issues in their complaint before the department, and that the department had the authority to grant the relief that the plaintiffs requested from the trial court.

The plaintiffs also contend that the permit renewal proceeding is inadequate because it is unlikely that the

where an application has been given a public hearing shall have the right to appeal as provided in section 22a-437. The commissioner may, by regulation, exempt certain categories, types or sizes of discharge from the requirement for notice prior to approving or denying the application if such category, type or size of discharge is not likely to cause substantial pollution. The commissioner may hold a public hearing prior to approving or denying any application if in his discretion the public interest will be best served thereby, and he shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. Notice of such hearing shall be published at least thirty days before the hearing in a newspaper having a substantial circulation in the area affected."

[20] General Statutes § 22a-437 (a) provides: "Any person who or municipality which is aggrieved by a decision under subsection (b) or (c) of section 22a-430, or by any order of the commissioner other than an order under section 22a-6b, to abate pollution may, after a hearing by the commissioner as provided for in section 22a-436 or subsection (b) or (c) of section 22a-430, appeal from the final determination of the commissioner based on such hearing to the Superior Court as provided in chapter 54. Such appeal shall have precedence in the order of trial as provided in section 52-192."

department will conduct a hearing on the matter in the foreseeable future, thus causing more harm to the winter flounder population and the waters of Long Island Sound. In support of this allegation, the plaintiffs note that although the defendants' permit expired two years ago, the department has not yet begun hearings addressing their renewal application. We repeatedly have held, however, that "[d]irect adjudication even of constitutional claims is not warranted when the relief sought by a litigant might conceivably have been obtained through an alternative [statutory] procedure . . . which [the litigant] has chosen to ignore." (Internal quotation marks omitted.) *Polymer Resources, Ltd.* v. *Keeney,* supra, 227 Conn. 563; *Pet* v. *Dept. of Health Services,* supra, 207 Conn. 354. In the present case, the plaintiffs could have obtained relief through an alternative statutory procedure, namely, past permit renewals. Millstone has been the subject of department reviews, approvals, and permits for more than twenty-five years. The plaintiffs, however, have failed to intervene in any of these proceedings, many of which addressed the very issues that they claim justify the trial court's intervention. The plaintiffs cannot now benefit from this deliberate decision to wait until the eleventh hour, claim futility or inadequacy, and then request that the trial court step in and issue relief that is properly within the authority and expertise of the department.

The plaintiffs, at oral argument before this court, acknowledged that they could have intervened in the defendants' earlier permit renewal proceedings before the department. They claim, however, that it would have been futile to pursue that option because the department would have denied the relief requested. Specifically, the plaintiffs claim that, as a result of the "close coordination" between the department and the defendants, the department is biased in favor of granting the defendants' permit renewal application.

Although a party is not required to exhaust an administrative remedy that is futile or inadequate, "we have never held that the mere possibility that an administrative agency may deny a party the specific relief requested is a ground for an exception to the exhaustion requirement." *Concerned Citizens of Sterling* v. *Sterling*, supra, 204 Conn. 559. Rather, we have held that, "[i]t is futile to seek a remedy only when such action *could not* result in a favorable decision and *invariably* would result in further judicial proceedings." (Emphasis added; internal quotation marks omitted.) *Simko* v. *Ervin*, supra, 234 Conn. 507. Here, the plaintiffs have failed to show, in effect, that the outcome of the defendants' permit renewal application has been predetermined by the department. Indeed, the plaintiffs have offered no evidence of bias. Their allegation is merely speculative. See *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 429 (when party's suspicion of bias on part of zoning commission is purely speculative, such suspicion does not render exhaustion of administrative remedies futile); *LaCroix* v. *Board of Education*, 199 Conn. 70, 84–85, 505 A.2d 1233 (1986) ("the statutory remedies are not rendered futile by the plaintiff's conclusory assertion that requesting and attending a hearing before the defendant board would have been pointless in the face of the board's earlier decision to terminate his employment"). "We presume that administrative board members acting in an adjudicative capacity are not biased." *Simko* v. *Ervin*, supra, 508; *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 429. The plaintiffs' unsupported allegation that the department was predisposed to renew the defendants' permit is not enough to overcome that presumption. Consequently, the plaintiffs' mere assertion of bias on the part of the department, without more, is not sufficient to excuse them, on the ground of futility, from exhausting available administrative remedies.

In *LaCroix* v. *Board of Education*, supra, 199 Conn. 70, this court explained why unsupported allegations that an administrative agency is biased are insufficient to establish that exhaustion of administrative remedies would be futile or inadequate. The plaintiff in *LaCroix* was a tenured teacher who challenged, on due process and breach of contract grounds, the termination of his contract by the defendant board of education (board). Id., 71–72. A hearing was scheduled after the board voted to terminate him. Id., 73. The record does not indicate whether a hearing was held in the plaintiff's absence. Id., 73 n.4. Thereafter, the board notified the plaintiff that, following the board's last regular meeting, it had terminated his employment, and further advised him that he could request a hearing. Id., 73–74. The plaintiff did not request a hearing, however, contending that exhaustion of administrative remedies was not required because the remedy would have been inadequate or futile in light of the board's previous decision to terminate his employment. Id., 84–85. We rejected the plaintiffs' argument, stating: "Had the plaintiff requested and attended a hearing following the board's . . . letter, he would have been able to raise the issue of lack of impartiality in an administrative appeal. 'By not appearing before the board, the plaintiff not only deprived the defendant board of the opportunity to hear, analyze and review a matter within its responsibility and expertise, but also deprived [him]self of the opportunity to put on [his] case and to make a proper record on which to seek judicial relief in the event [he] was terminated.' [*Cahill* v. *Board of Education*, 198 Conn. 229, 241–42, 502 A.2d 410 (1985).]" *LaCroix* v. *Board of Education*, supra, 85.

In the present case, by failing to exhaust their administrative remedies, the plaintiffs, like the plaintiff in *Lacroix*, deprived the department of the opportunity to review a matter within its responsibility and exper-

tise. The plaintiffs also denied this court the benefit of the department's findings and conclusions concerning the environmental problems associated with the use of a once-through cooling system, an area that is clearly better addressed by the department. See *Housing Authority* v. *Papandrea*, supra, 222 Conn. 420 (" '[t]he doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions' "); *Concerned Citizens of Sterling* v. *Sterling*, supra, 204 Conn. 557 (same). In addition, the plaintiffs denied themselves the ability to make a record on which to seek judicial relief, in the event that the department renewed the defendants' permit. Finally, had the plaintiffs requested relief from the department, they would have been able to raise the claim of bias on appeal.

We conclude that the plaintiffs have failed to exhaust their administrative remedies and that their failure to do so was not excused by any exception to the exhaustion requirement. The trial court, therefore, did not have subject matter jurisdiction to entertain the plaintiffs' application for injunctive relief.

The judgment is vacated and the case is remanded to the trial court with direction to render judgment dismissing the action.

In this opinion the other justices concurred.