[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff instituted this action seeking a declaratory judgment and a permanent injunction after one of the defendants, Paula Brown, received zoning and building permits to build a single family dwelling on a lot adjacent to the plaintiff's lot. The plaintiff is Rachel DeRham. The defendants are Dennis Brown, Paula Brown, the Town of Farmington, the Farmington Town Plan and Zoning Commission, Jeffrey Ollendorf a Farmington zoning enforcement officer, Mark Saint Pierre, a Farmington Building Official, and World Savings Bank.
The present action was commenced on November 24, 1999. In her second amended complaint dated August 24, 2000, the plaintiff claims that the actions of the defendants constitute the creation of an illegal subdivision (count one); a violation of the Farmington Zoning Regulations (count two); a violation of General Statutes § 8-3 (f) (count three); the unlawful use of an easement (count four); trespass (count five); a violation of deed restrictions (count six); and unjust enrichment (count seven). On September 28, 2000, World Savings Bank, Dennis Brown and Paula Brown filed an answer, seven special defenses and eight counterclaims.[1] An answer was filed by the Town of Farmington, the Farmington Town Plan and Zoning Commission, Jeffrey Ollendorf and Mark St. Pierre on November 27, 2000.
The following facts are undisputed.[2] The Town of Farmington adopted subdivision regulations in 1950. (Affidavit of Jeffrey Ollendorf dated December 22, 2000, ¶ 3.) In 1961, the Pinnacle Orchard Corporation filed an application with the Farmington Plan and Zoning Commission for the approval of a plan of subdivision known as Pinnacle Orchard, which contains the lots at issue in this case. (Affidavit of Rachel DeRham, dated January 9, 2001, ¶ 3.) A revised subdivision plan changed the boundaries of the subject lots in 1965. (DeRham Affidavit, ¶ 4.) CT Page 9731
Paula Brown is the current owner of original lot 24A of the Pinnacle Orchard subdivision and original parcel 12. (Affidavit of Paula Brown, dated December 22, 2000, ¶ 2.) Original parcel 12 is not located within the Pinnacle Orchard subdivision. (DeRham Affidavit, ¶ 6.) Title to original lot 24A and original parcel 12 has been in the name of Paula Brown and/or her husband, Dennis Brown, for approximately twenty-five years. (Brown Affidavit, ¶ 2.) Original lot 24A and original parcel 12 are abutting lots. (Brown Affidavit, ¶ 5.) The plaintiff is the owner of lots 23 and 24 of the Pinnacle Orchard subdivision and a principal of the Pinnacle Orchard Corporation. (DeRham Affidavit, ¶¶ 2, 5.) In addition to having an easement across a portion of the plaintiff's property, Dennis Brown and Paula Brown use a driveway that is located partially outside of the easement area across the plaintiff's property in order to access their home on original lot 24A. (DeRham Affidavit, ¶ 8.)
On July 28, 1999, Paula Brown recorded a Lot Revision Map, which created revised lot 24A and revised parcel 12 by changing the boundary line between original lot 24A and original parcel 12. (Brown Affidavit, ¶ 6-7.) After recording the lot revision map, Paula Brown was issued a zoning permit on August 12, 1999 by the Farmington zoning enforcement official, Jeffrey Ollendorf and a building permit on August 31, 1999 to construct a single family dwelling on revised parcel 12. (Supplemental Affidavit of Rachel DeRham, dated June 26, 2001, ¶ 3.) A foundation has been installed on revised parcel 12. (Brown Affidavit, ¶ 9.) Despite the plaintiff's objection, the construction workers have used the driveway across the plaintiff's property to access the construction site. (DeRham Affidavit, ¶ 10.) The plaintiff filed an appeal with the Zoning Board of Appeals on September 30, 1999 but withdrew that appeal upon discovering the actual date that Paula Brown's zoning permit was issued. (DeRham Supp. Affidavit, ¶ 5-7.)
On December 22, 2000, a motion for summary judgment was filed by World Savings Bank, Dennis Brown and Paula Brown as to counts one, two and three of the plaintiff's second amended complaint.[3] On January 9, 2001, the plaintiff filed a cross motion for summary judgment (#118) as to counts one, two and three of her second amended complaint.[4] Upon the court's request, both parties submitted supplemental memoranda addressing the question whether the plaintiff failed to exhaust administrative remedies.
World Savings Bank, Dennis Brown, and Paula Brown argue that the question of whether the plaintiff has failed to exhaust her administrative remedies is a mixed question of law and fact, which cannot be decided on the existing state of the record. World Savings Bank, Dennis Brown, and Paula Brown further argue that if the plaintiff is CT Page 9732 unable to meet her burden of proof on the exhaustion issue at trial, then the court will have to dismiss her action for lack of subject matter jurisdiction. The plaintiff asserts that she did not receive actual or constructive notice of the issuance of the building and zoning permits to Paula Brown within the thirty day appeal period and therefore falls within an exception to the exhaustion doctrine.
World Savings Bank, Dennis Brown and Paula Brown contend that summary judgment should be granted in their favor as to counts one, two and three of the plaintiff's complaint. In support of their motion, they argue that the filing of the boundary revision map by Paula Brown was not a subdivision, resubdivision or modification requiring approval by the Farmington Town Plan and Zoning Commission and, therefore, Paula Brown has not created an illegal subdivision or resubdivision and was properly issued zoning and building permits by the municipal defendants for her revised lot. On the other hand, the plaintiff contends that summary judgment should be granted in her favor on counts one, two and three because Paula Brown's boundary revision required the approval of the Farmington Plan and Zoning Commission. The plaintiff also requests that the court enjoin further construction of the single family dwelling on revised parcel 12.
 A
"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . [Courts] have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. . . . [B]ecause the exhaustion doctrine implicates subject matter jurisdiction, [courts] must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff['s] claim." (Citations omitted; internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities Service Co., 254 Conn. 1,11-12, 756 A.2d 262 (2000). "The trial court may raise sun sponte the issue of subject matter jurisdiction." Greco v. Commissioner of MotorVehicles, 61 Conn. App. 137, 143, 762 A.2d 926 (2000).
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . In addition, the administrative agency may be able CT Page 9733 to resolve the issues, making judicial review unnecessary. As the United States Supreme Court has stated, [a] complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." (Citations omitted; internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities ServiceCo., supra, 254 Conn. 12-13.
"The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed." (Citations omitted; internal quotation marks omitted). Fish Unlimited v. Northeast Utilities ServiceCo., supra, 254 Conn. 13. One exception to the exhaustion doctrine occurs when a party does not have actual or constructive notice of an agency's decision. "[T]he right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue. . . . Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless." (Citations omitted; internal quotation marks omitted.) Loulis v. Parrott, 241 Conn. 180, 191, 695 A.2d 1040 (1997). "It is true that the legislature has not required notice to be given regarding an administrative action such as zoning or building permit. That does not necessarily mean, however, that the legislature also intended to bar aggrieved persons from the courts based on their failure to exhaust an administrative remedy when they seek to challenge the issuance of a permit of which they had no notice." Id. 193-94. "The legislature could not possibly have intended that the plaintiffs be required to exhaust an administrative process of which they neither had notice nor even had any right to notice." Id., 192.
Although none of the defendants raised the issue of exhaustion of remedies, because "the exhaustion doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff's claim," Fish Unlimited v.Northeast Utilities Service Co., supra, 254 Conn. 12. Contrary to the claim of World Savings Bank, Dennis Brown and Paula Brown, whether the court has subject matter jurisdiction is a question of law.
"[W]hen a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. . . . The power of the board to review, on appeal, under 8-6 (1)[5] of the General Statutes, any order of the zoning CT Page 9734 enforcement officer and, under General Statutes § 8-7,[6] to reverse, affirm or modify that order also supplies some measure of elasticity. . . . This power is vested in a zoning board of appeals, both to provide aggrieved persons with full and adequate administrative relief and to give the reviewing court the benefit of the local board's judgment." (Citations omitted; internal quotation marks omitted.) CountryLands, Inc. v. Swinnerton, 151 Conn. 27, 33-34, 193 A.2d 483 (1963). "Furthermore, rarely, if ever, could any court, by way of a declaratory judgment, determine that an administrative officer should exercise his discretion in a given manner." Id., 34.
Pursuant to § 8-7, any person aggrieved by a decision of the zoning enforcement officer must appeal to the board "within such time as is prescribed by a rule adopted by [the] board." Article V, Section 4B4 of the Farmington Zoning Regulations provides that any appeal of a decision by a zoning enforcement officer must be filed within ten days. (Ollendorf Exhibit 1, p. 1.) The court finds that the Farmington Plan and Zoning Commission could have determined through the review process whether there was an illegal subdivision and whether Paula Brown's building and zoning permits were properly issued.
The plaintiff argues that she did not have actual or constructive notice of the zoning officer's decision regarding Paula Brown's zoning and building permits and, therefore, falls within an exception to the exhaustion doctrine. The zoning enforcement officer issued Paula Brown a zoning permit on August 12, 1999. The plaintiff argues that she became aware of the issuance of the zoning permit for the first time on or about September 20, 1999, approximately five weeks after the zoning permit was issued. (DeRham Supp. Affidavit, ¶ 3.) The court finds that because the plaintiff was not aware of the zoning enforcement officer's decision to grant Paula Brown a zoning permit, she falls within the exception to the exhaustion of administrative remedies doctrine discussed in Loulisv. Parrott, supra, 241 Conn. 193-94, and, therefore, despite her failure to exhaust, this court has subject matter jurisdiction to hear the plaintiff's claims.
 B
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles CT Page 9735 of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Miles v.Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). A material fact is "a fact that will make a difference in the result of a case." River Dock Pile, Inc. v. Ins. Co. of North America, 57 Conn. App. 227, 231,747 A.2d 1060 (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
"The process of statutory interpretation involves a reasoned search for the, intention of the legislature. . . . In other words, [courts must] determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, [courts] look to the words of the statute itself to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) AndersenConsulting, LLP v. Gavin, 255 Conn. 498, 512, 767 A.2d 692 (2001).
 1 Count One
Count one of the plaintiff's second amended complaint alleges that the creation of revised lot 24A and revised parcel 12 constitutes either a subdivision, a resubdivision, or a modification of the existing subdivision, and that, pursuant to General Statutes § 8-25 and the Farmington Subdivision Regulations, including §§ 1.02.14,[7]
1.02.12[8] and 2.08,[9] the defendant could not lawfully create revised lot 24A and revised parcel 12 without the approval of the Farmington Town Plan and Zoning Commission.
 a Subdivision
World Savings Bank, Paula Brown and Dennis Brown assert that subdivision approval is not required to adjust boundary lot lines. The plaintiff argues that Paula Brown's revision is contingent on the approval of the Farmington Plan and Zoning Commission because it created a subdivision different from the original Pinnacle Orchard subdivision that CT Page 9736 the commission had previously approved. The plaintiff further argues that when determining whether there has been a subdivision, the counting of lot numbers is cumulative and according to the definition of "subdivision" in General Statutes § 8-18 and the Farmington subdivision regulations, the question of whether a subdivision has been created is answered by counting the number of pieces that have been formed from a single root parcel since subdivision regulations were enacted.
A subdivision is defined as "the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission, for the purpose, whether immediate or future, of sale or building development expressly excluding development for municipal, conservation or agricultural purposes, and includes resubdivision." General Statutes § 8-18. The definition of subdivision contained in § 1.02.14 of the Farmington Subdivision Regulations is almost identical to the definition contained in §8-18.[10]
General Statutes § 8-25 (a) provides in part: "No subdivision of land shall be made until a plan for such subdivision has been approved by the commission." General Statutes § 8-26 provides in part: "The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter. . . . The commission may hold a public hearing regarding any subdivision proposal if, in its judgment, the specified circumstances require such action. No plan of resubdivision shall be acted upon by the commission without a public hearing."
"Subdivision controls are primarily designed to cause safe development of large parcels into multiple lots, and there are many situations which should not require governmental intervention. Examples would be the moving of a property boundary." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 10.9, p. 214. "Including [a] revision [of lot lines] as a subdivision pursuant to § 8-18 would not be prudent for public policy reasons. A minor lot line adjustment between two existing lots, whereby no new lot is created, does not constitute a subdivision as defined by § 8-18 and, thus, does not require municipal approval. . . . To accept every minor adjustment of property . . . as a subdivision under § 8-18 would lead to a substantial increase in applications to municipal planning commissions and in land use appeals." (Internal quotation marks omitted.) Goodridgev. Zoning Board of Appeals, 58 Conn. App. 760, 765-66, cert. denied,254 Conn. 930, 761 A.2d 753 (2000); see also Ross v. Planning and ZoningBoard of Appeals, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 143682 (June 5, 1996, Tobin, J.) (taking land CT Page 9737 from one lot and adding it to one or more lots does not meet definition of subdivision).
The plaintiff emphasizes the Appellate Court's use of the adjective "minor" to describe the lot line adjustment in Goodridge v. Zoning Boardof Appeals, supra, 58 Conn. App. 765-66. The holding in Goodridge v.Zoning Board of Appeals, supra, 58 Conn. App. 766, is based on the plain language of § 8-18, which defines a subdivision as "the division of a tract or parcel of land into three or more parts or lots made subsequent to the adoption of subdivision regulations by the commission." Two lots, lots 24A and parcel 12, existed prior to Paula Brown's boundary line revision and two lots existed after the boundary line revision. "There was no division of a tract into three or more parts or lots and in the absence of this statutory requirement there was no subdivision." McCrannv. Town Plan Zoning Commission, 161 Conn. 65, 70,282 A.2d 900 (1971).[11] The court finds that Paula Brown's boundary line revision between adjacent lots 24a and parcel 12 does not constitute a subdivision because it is a "lot line adjustment between two existing lots, whereby no new lot is created." Goodridge v. Zoning Board of Appeals, supra, Conn. App. 765. Further, Paula Brown's boundary line revision did not result in the creation of three or more lots and, therefore, was not a subdivision.[12]
 b Resubdivision
World Bank, Paula Brown and Dennis Brown further contend that the boundary line revision was not a resubdivision because no additional lot was created. The plaintiff argues that the boundary line revision constitutes a resubdivision because the revision reduces the size of a lot originally within the subdivision, lot 24A, and allows an additional building to be constructed on revised parcel 12, which had been, but no longer is, within the original subdivision.
A resubdivision is defined as "a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map." General Statutes § 8-18. The definition of resubdivision contained in § 1.02.12 of the Farmington Subdivision Regulations is identical to the definition contained in § 8-18.[13]
Paula Brown's boundary line revisions do not affect any street layout CT Page 9738 shown on a map or affects any area reserved for public use. (Brown Affidavit, ¶ 7.) Thus, the issue is whether the boundary line revision is a change to a subdivision or resubdivision that "(c) diminishes the size of any lot shown thereon and creates an additional building lot." General Statutes § 8-18.
The legislative history of § 8-18 makes clear that "the legislature intended to exempt adjustments to lot lines even after the recording of the original subdivision map, as long as such change in lot lines does not create an additional lot. Conn. Joint Standing Committee Hearings,General Law, Pt. 6, 1967 Sess., p. 1716." DiLieto v. Guilford Planning Zoning Comm., Superior Court, judicial district of New Haven, Docket No. 300237 (April 3, 1991, Fracasse, J.).[14] "As a practical matter, boundary changes to approved subdivision lots are seldom a problem, as no one gets excited as long as another lot is not created. . . . If a portion of a lot is added to adjacent property but the number of lots remains the same, it would be a rare case where this change would have any material effect on the subdivision or the surrounding area." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 10.9, p. 217. Furthermore, because the definition of subdivision includes resubdivision under § 8-18, the Appellate Court's analysis in Goodridge v. Zoning Board of Appeals, supra, 58 Conn. App. 765-66 (holding that boundary line revisions do not constitute subdivision); is applicable to resubdivisions as well. See also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 10.9, p. 218.
As noted previously, two lots existed prior to Paula Brown's boundary line revision and two lots existed after the boundary line revision. Original lot 24A and original parcel 12 were both building lots before the change. (Brown Affidavit, ¶¶ 3-4.) Thus, the revision and creation of revised lot 24A and revised parcel 12 did not create additional building lots. It is not enough that a lot diminishes in size, there must also be the creation of an additional building lot. See § 8-18. Therefore, the court finds that Paula Brown's boundary line revision does not constitute a resubdivision.
 c Modification/Alteration/Revision
The plaintiff argues that § 2.08[15] of the Farmington subdivision regulations requires that the Farmington Town Plan and Zoning Commission review Paula Brown's lot revision map. World Savings Bank, Dennis Brown and Paula Brown contend that § 2.08 cannot be applied retroactively to pre-existing subdivision lots pursuant to General Statutes § 8-26a.[16] World Savings Bank, Dennis Brown and Paula CT Page 9739 Brown also contend that reading § 2.08 as suggested by the plaintiff would conflict with the enabling legislation by requiring Commission approval of changes that do not meet the statutory definition of subdivision or resubdivision.
The defendants' argument that § 2.08 cannot be applied retroactively to pre-existing subdivision lots is without merit. Section8-26a exempts existing subdivisions from subsequent regulations. Johnsonv. Zoning Board of Appeals, 35 Conn. App. 820, 824, 646 A.2d 953 (1994). The Town of Farmington adopted subdivision regulations in 1950 (Ollendorf Affidavit, ¶ 3.) The Pinnacle Orchard Corporation filed its subdivision plan in 1961. (DeRham Affidavit, ¶ 3.) A revised subdivision plan, changing the boundaries of lots 23, 24 and 24A of Pinnacle Orchard was filed in 1965. (DeRham Affidavit, ¶ 4.) Section 2.08 of the Farmington subdivision regulations became effective on January 26, 1996 (Ollendorf Affidavit, ¶ 4.) On July 28, 1999, Paula Brown filed a lot revision map. (Ollendoff Affidavit, ¶ 2.)
While § 8-26a would exempt the revised subdivision plan filed in 1965 from the requirements of § 2.08, § 8-26a does not exempt the 1999 lot revision map from the requirements of § 2.08. Paula Brown's revision of the boundary line between original lot 24A and original parcel 12 is an alteration or revision because it is "a substantial change to real estate . . . not involving an addition to or removal of the exterior dimensions of a building's structural parts." Black's Law Dictionary 77 (6th Ed. 1990). Because Paula Brown's change in the lot line is an alteration or revision, it falls within § 2.08. Although Pinnacle Orchard was an existing subdivision, § 2.08 was in effect when Paula Brown submitted her lot revision map in 1999 and, therefore, she should have complied with its requirements.[17] The zoning enforcement officer also was required to comply with § 2.08 and determine whether the proposed lot revision was a minor or major change, a factor which would determine whether the change required affirmative action by the commission. The issue of whether the boundary line revision change is major or minor is an issue of material fact because it is "a fact that will make a difference in the result of the case," River Dock Pile, Inc. v. Ins. Co. of North America, supra, 57 Conn. App. 231, and, therefore, summary judgment is inappropriate at this time.
World Savings Bank, Dennis Brown and Paula Brown alternatively argue that reading § 2.08 of the Farmington Subdivision Regulations in the manner suggested by the plaintiff would conflict with the enabling legislation. The plaintiff disagrees.
"It has been said that the whole field of subdivision regulation is peculiarly a creature of legislation. It is therefore imperative that CT Page 9740 before subdivision regulations may be made operative, the necessary statutory authorization of such regulation must exist. . . . In other words, in order to determine whether the regulation in question was within the authority of the commission to enact, we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment." (Internal quotation marks omitted.) Smith v. Zoning Board of Appeals, 227 Conn. 71, 81, 629 A.2d 1089
(1993), cert. denied 510 U.S. 1164, 114 S.Ct. 1190, 127 L.Ed.2d 540
(1994). "The power of the planning and zoning commission to adopt subdivision regulations is limited by the terms of the statute or special act. . . . The [regulation] must rest primarily upon the enabling act and must not go beyond the power delegated by it." (Citations omitted; internal quotation marks omitted.) Id., 82.
Pursuant to General Statutes § 8-4a,[18] Farmington established a combined planning and zoning commission on March 7, 1945. The planning powers and duties of a combined planning and zoning commission versus a separate planning commission are essentially the same. R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 10.1, p. 196. There is not a special act governing the Farmington Plan and Zoning Commission's control over subdivisions and, therefore, its powers are limited by statute.
"The gist of the cases strictly construing the powers of a planning commission is that the commission can only adopt regulations within its statutorily delegated authority." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 10.6, p. 202. "On the other hand, when a planning commission acts within its statutoryauthority, it has very broad powers in enacting subdivision regulations." (Emphasis in original.) Id. "Section 8-25 sets forth the powers of the planning commission to promulgate substantive provisions of [its] subdivision regulations." Property Group, Inc. v. Planning ZoningCommission, 29 Conn. App. 18, 22, 613 A.2d 1364, aff'd, 224 Conn. 912,617 A.2d 167 (1992). For example, "[t]he planning commission has the authority to determine whether an existing division of any land is a subdivision or resubdivision subject to Chapter 126. The provision allows the commission to review not only proposed changes, but also claims that prior divisions were illegal subdivisions." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 10.9, p. 218. Furthermore, "a [planning] regulation is entitled to a presumption of validity." Bauer v. Waste Management of Connecticut, 239 Conn. 515, 529,686 A.2d 481 (1996). Section 2.08 of the Farmington Subdivision Regulations is within the statutory authority of the Farmington Plan and Zoning Commission pursuant to §§ 8-25 and 8-26, and therefore, § 2.08 is a valid regulation and does not conflict with the enabling legislation. CT Page 9741
An issue of fact exists as to whether Paula Brown's revision of the lot lines between original lot 24A and original parcel 12 was a major or minor change. If the revision was a major change, it would have required commission approval or review pursuant to § 2.08 of the Farmington subdivision regulations. Because the court finds that there is the existence of material fact, both motions for summary judgment must be denied.
 2 Count Two
Count two of the plaintiff's second amended complaint alleges that the issuance of a zoning permit to Paula Brown violated Farmington Zoning regulations Article II, Section 1A[19] by authorizing the construction of a second single family residence in land that originally comprised one lot in a R40 zone. An issue of material fact exists regarding whether the plaintiff's revision of the boundary lines was major or minor and, therefore, it cannot be determined whether there is an illegal subdivision. If there is not an illegal subdivision, the issuance of a zoning permit to Paula Brown would not violate Article II, Section 1A of the Farmington Zoning regulations because there would only be one single family dwelling unit per lot. Both motions for summary judgment as to count two are denied.
 3 Count Three
In count three of her second amended complaint, the plaintiff alleges that the issuance of a building permit to Paula Brown violates General Statutes § 8-3(f)[20] because the zoning permit on which it was based was unlawfully and improperly issued. The court cannot determine whether the zoning permit issued to Paula Brown was unlawful and improperly issued until it determines whether there has been an illegal subdivision. An issue of material fact exists regarding whether the plaintiff's revision of the boundary lines was major or minor and, therefore, it cannot be determined whether there is an illegal subdivision. Both motions for summary judgment as to count three are denied.
 4 Injunctive Relief CT Page 9742
"The issuance of an injunction is the exercise of an extraordinary power which rests within the sound discretion of the court, and the justiciable interest which entitles one to seek redress in an action for injunctive relief is at least one founded on the imminence of substantial and irreparable injury. . . . It is not enough to show that the defendant has violated the zoning regulations. The plaintiff seeking injunctive relief bears the burden of proving facts which will establish irreparable harm as a result of that violation." (Citations omitted; internal quotation marks omitted.) Karls v. Alexandra, 179 Conn. 390, 401,426 A.2d 784 (1980).
In the present action, the plaintiff only alleges "[i]t is my belief that the construction of a second home on the original Lot 24A would have a detrimental effect on my enjoyment, as well as both the use and the value, of my property." (DeRham Affidavit, ¶ 11.) The plaintiff has not submitted sufficient evidence to show that absent an injunction, she will suffer irreparable harm and, therefore, the plaintiff's request for injunctive relief is denied.
 CONCLUSION
For the foregoing reasons, the plaintiffs and the defendants' motions for summary judgment are denied. The plaintiff's request for injunctive relief also is denied.
Peck, J.