[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM DECISION
I. FACTS
The plaintiff, Andrea Giantis, was employed by the defendant, American Mortgage Services, L.P. d/b/a William Raveis Mortgage, as a loan processing assistant from October 8, 1997 through June 24, 1998. The plaintiff alleges that during her employment, one of her coworkers, Christopher Mauro, sexually harassed her, and, though she informed the defendant of the situation, the defendant failed to investigate or to take any other action to ameliorate the resulting hostile work environment.
The plaintiff filed this action against the defendant on June 12, 2000. The revised complaint, in five counts, brings claims for constructive wrongful discharge (count one), breach of contract (count two), breach of the implied covenant of good faith and fair dealing CT Page 5521-bs (count three), negligent infliction of emotional distress (count four) and invasion of privacy (count five).
The defendant now moves to strike counts one through five of the complaint. The plaintiff has timely filed a memorandum in opposition. The court heard oral argument in connection with the motion on February 4, 2002.
 II. STANDARD OF REVIEW
The purpose of a motion to strike is to "challenge the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). In determining the sufficiency of a complaint "all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) Doe v. Yale University, 252 Conn. 641, 667, 748 A.2d 834
(2000). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . Moreover . . . [w]hat is necessarily implied (in an allegation) need not be expressly alleged." (Citation omitted.) Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089
(1998).
 III. DISCUSSION A. Exhaustion of Administrative Remedies
The defendant first argues that the plaintiff has failed to exhaust her administrative remedies and on this ground moves to strike count one of the complaint. The plaintiff argues that because she seeks compensatory and punitive damages, which the Commission on Human Rights and Opportunities (CHRO) has no authority to award, the available administrative remedies would be inadequate.
"It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities Service Co.,254 Conn. 1, 11-12, 756 A.2d 262 (2000). "The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions . . . [W]e have recognized such CT Page 5521-bt exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate. In light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed." (Citations omitted; internal quotation marks omitted.) Id., 11-13.
The CHRO has no authority to award compensatory and punitive damages.Bridgeport Hospital v. Commission on Human Rights and Opportunities,232 Conn. 91, 102, 111, 653 A.2d 782 (1995). There is currently a split in the Superior Court as to whether a plaintiff must exhaust administrative remedies when she seeks relief that the CHRO does not have the authority to award.
Some courts have held that a plaintiffs election of remedies does not exempt her from the exhaustion requirement. See, e.g., Brightly v. AbbottTerrace Health Center, Superior Court, judicial district of Waterbury, Docket No. 148584 (February 27, 2001, Rogers, J.) (29 Conn.L.Rptr. 102);Okun v. Misiewicz, Superior Court, judicial district of Tolland at Rockville, Docket No. 67084 (July 31, 2000, Sferrazza, J.); Matejek v.New England Technical Institute of Connecticut, Inc., Superior Court, judicial district of New Haven, Docket No. 404320 (April 7. 1998. Blue, J.). These cases reason that General Statutes §§ 46a-83, 46a-100 and46a-101. when read together. require that a plaintiff, in order to bring an independent claim in the Superior Court, must first obtain a release from the CHRO.[1]
The opposing view holds that a plaintiff who seeks compensatory and punitive damages is exempted from the exhaustion requirement. See, e.g.Sealund v. Lexington Healthcare, Inc., Superior Court, judicial district of Danbury. Docket No. 339501 (December 27, 2000, Hiller, J.); Delvecchiov. Griggs Brown Company, Inc., Superior Court, judicial district of New London at Norwich, Docket No. 118659 (April 20, 2000, Hurley, J.) (27 Conn.L.Rptr. 89); Cantavero v. Horizon Meat Seafood Distributors,Inc., Superior Court, judicial district of Stamford, Docket No. 152918 (April 22, 1997, Nadeau, J.) (19 Conn.L.Rptr. 333). These courts have reasoned that "where a plaintiff seeks relief that the CHRO cannot provide, the plaintiff is not required to exhaust the available administrative remedies because those remedies are inadequate." Sealundv. Lexington Healthcare, Inc., supra, Superior Court, Docket No. 339501.
A third view attempts to credit a plaintiffs "good faith effort" to institute proceedings with the CHRO prior to bringing an action before the Superior Court. See, e.g., Dinegar v. University of New Haven, Superior Court judicial district of New Haven, Docket No. 378256 (October CT Page 5521-bu 16, 1997, Silbert, J.); Denning v. Admarket International, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 343964 (July 1, 1998, Melville, J.) (22 Conn.L.Rptr. 440).
Even those cases which hold that a plaintiff must exhaust her administrative remedies with the CHRO apply this reasoning only to statutory claims. See, e.g., Okun v. Misiewicz, supra, Superior Court, Docket No. 67084 (applying the exhaustion doctrine to count one only, which alleged a violation of § 46a-60); Matejek v. New EnglandTechnical Institute of Connecticut, Inc., supra, Superior Court, Docket No. 404320 (expressly stating that the second count, alleging intentional infliction of emotional distress, was not at issue in consideration of the motion to dismiss); Brightly v. Abbott Terrace Health Center, supra,29 Conn.L.Rptr. 102 (treating the plaintiffs common law counts, alleging wrongful termination, intentional infliction of emotional distress and breach of the implied covenant of good faith and fair dealing separately from the plaintiffs statutory count, alleging a violation of § 46a-60).
In this case, the plaintiff has brought only common law causes of action, so the doctrine of exhaustion of administrative remedies does not apply to her claims. Therefore, the defendant's motion to strike count one on this ground is denied.
 B. Wrongful Discharge
The court's examination of the plaintiffs alternative available remedies, however, does not end here. The defendant has moved to strike count one, alleging wrongful discharge, on the ground that the plaintiff has not sufficiently alleged that she falls under the Sheets exception to the general rule that an at-will employee has no cause of action for wrongful discharge. The general rule is that "contracts of permanent employment, or for an indefinite term, are terminable at will." Sheetsv. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474, 427 A.2d 385 (1980). In Sheets, however, the Supreme Court recognized an exception to the general rule where the employee's discharge "contravenes a clear mandate of public policy." Id. Subsequently, in interpreting the Sheets
exception, the Supreme Court has held that "[a] finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise withoutremedy and that permitting the discharge to go unredressed would leave a CT Page 5521-bv valuable social policy to go unvindicated." (Emphasis in original; internal quotation marks omitted.) Burnham v. Karl Gelb, P.C.,252 Conn. 153, 159-60, 745 A.2d 178 (2000).
The plaintiffs allegations clearly meet the first prong of theSheets/Burnham test since General Statutes § 46a-60 evidences a clear public policy against sexual discrimination, including sexual harassment.[2] The plaintiff is unable, however, to meet the second part of the test, for she cannot show that she was otherwise without remedy. Since the plaintiff did not file a claim with the CHRO within the 180-day limit pursuant to General Statutes § 46a-82 (e),[3] she may not now bring an action before that agency and at this point is arguably "otherwise without remedy." The plaintiffs own lack of timeliness, however, has resulted in this circumstance and she may not now benefit from her own lack of diligence. The fact that the plaintiff did not seek the remedy available through the CHRO within the statutory period does not mean that the court must now treat the plaintiffs common law claim as though the statutory remedy never existed. Therefore, the defendant's motion to strike count one is granted.
 C. Breach of Contract
In count two, the plaintiff brings a claim for breach of contract, alleging that the personnel guidelines, policies and procedures published by the defendant constitute a contract and that the defendant breached that contract through its actions. The plaintiff refers specifically to the defendants non-discrimination policy, its disciplinary conditions policy, its grievances policy and its sexual harassment policy. (Complaint, Count Two. ¶ 12.) The sexual harassment policy states that the defendant will "endeavor to prevent sexual harassment from occurring in the workplace." (Complaint. Exhibit A.) The defendant moves to strike count two on the ground that the personnel guidelines contain the following disclaimer: "This manual is to be used for reference purposes only. It is not to be interpreted as a contract of employment between management and employees. In order to retain necessary flexibility in the administration of policies and procedures. William Raveis Real Estate Services reserves the right to change, revise, or eliminate any of the policies and/or benefits described in this handbook, except for its policy of employment at will." (Complaint, Exhibit B.) The defendant also argues that the plaintiff improperly seeks tort damages based on this contract claim.
In support of the defendant's first ground, that the personnel guidelines do not constitute a contract, the defendant, in its memorandum CT Page 5521-bw of law, page 8, asks the court to determine that Exhibit A, which the plaintiff has described as the sexual harassment policy, is merely a part of and is included in Exhibit B, the personnel guidelines. In ruling on a motion to strike, the court does not engage in making findings of fact. See Parsons v. United Technologies Corp., 243 Conn. 66, 68, 700 A.2d 655
(1997). Therefore, it would be inappropriate for the court to grant the motion to strike count two on this ground.
The plaintiff does, however, improperly seek tort damages based on this contractual claim. "[C]ontract damages ordinarily consist of consequential losses" and "ordinarily do not encompass such losses as pain and suffering." Gazo v. Stamford, 255 Conn. 245, 265-66, 765 A.2d 505
(2001). The only damages that the plaintiff claims to have suffered as a result of the defendant's alleged breach of contract are humiliation, physical and mental and emotional anguish and harm. (Complaint, Count Two, ¶ 15.) Since she makes no claim of suffering any consequential losses, such as lost wages or medical expenses, count two does not state a claim upon which relief can be granted. Therefore, the motion to strike count two on this ground is granted.
 D. Breach of Implied Covenant of Good Faith and Fair Dealing
The defendant next moves to strike count three of the complaint, which alleges that the defendant breached the implied covenant of good faith and fair dealing by its actions, on two grounds. First, the defendant argues that the implied covenant of good faith and fair dealing is merely a principle of contract construction, not an independent cause of action. Second. the defendant claims that the plaintiff improperly seeks tort damages based on this count.[4]
The defendant argues that the court should interpret Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 479 A.2d 781 (1984), to mean that there is no independent cause of action for a breach of the implied covenant of good faith and fair dealing in Connecticut. Instead, the defendant argues. the covenant of good faith and fair dealing is merely a rule of construction. Though the Supreme Court uses the phrase "rule of construction" to describe the covenant of good faith and fair dealing inMagnan, the phrase must be understood in context. Specifically, the court stated that "it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore. cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Id., 567. While this language CT Page 5521-bx limits the scope of the covenant of good faith and fair dealing, it does not suggest that there is no independent cause of action for breach of the covenant. In fact, "Connecticut courts have established an independent cause of action for breach of an implied covenant of good faith and fair dealing in a contract." SNETCO v. Guardian Systems, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 358589 (January 23, 1995, Martin, J.), and cases cited therein. Therefore, the defendant's motion to strike count three on this ground is denied.
The defendant also argues that the court should strike count three because the plaintiff improperly seeks tort damages based on this contractual claim. See Greenwoods v. Northwest Community Bank, Superior Court, judicial district of Hartford, Docket No. 558956, n. 5 (June 4, 1999, Teller, J.) ("breach of the implied covenant of good faith and fair dealing is in essence a contract claim"). The plaintiff alleges that "[a]s a result of said breach of implied covenant of good faith and fair dealing, the plaintiff has suffered damages, including humiliation, physical and mental and emotional anguish and harm." (Complaint, Count Three, ¶ 15.) Just as in count two, the plaintiff alleges no damages in count three which would be recoverable in contract. Under these circumstances, this count is legally insufficient. Therefore, the motion to strike count three on this ground is granted.
 E. Negligent Infliction of Emotional Distress
The defendant next moves to strike count four of the complaint on the ground that the plaintiffs claim for negligent infliction of emotional distress is barred by the exclusivity provision of the Connecticut Workers' Compensation Act (act). The plaintiff argues that claims for emotional distress are not barred by the act.
The exclusivity provision of the act provides that "[a]n employer . . . shall not be liable for any action for damages on account of personalinjury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the willful and serious misconduct of the injured employee or by his intoxication." (Emphasis added.) General Statutes § 31-284 (a). In defining "personal injury," however, the act excludes "a mental or emotional impairment. unless such impairment arises from a physical injury or occupational disease" and "a mental or emotional impairment which results from a personnel action. CT Page 5521-by including, but not limited to, a transfer, promotion. demotion or termination." General Statutes § 31-275 (16) (B) (ii) and (iii). The Supreme Court recently has held that because emotional distress claims that do not arise from physical injury or occupational disease are not compensable under the act, such actions are not precluded by the act.Perodeau v. Hartford, 259 Conn. 729, 744-45 (2002). Since the plaintiff has not alleged that her emotional distress arose from a physical injury or occupational disease, her claim for emotional distress would not be compensable under the act. Therefore, the exclusivity provision does not apply. The defendant's motion to strike count four is denied.
 F. Invasion of Privacy
Lastly, the plaintiff alleges in count five that "It Ihe conduct of the defendant constitutes an unreasonable and highly offensive intrusion upon the seclusion of the plaintiff." (Complaint, Count Five, ¶ 12.) The defendant moves to strike this count on the ground that the claim is barred by the exclusivity provision of the Workers' Compensation Act and because the plaintiff has failed to plead the necessary elements of a claim for invasion of privacy.
The Supreme Court has adopted the four categories of invasion of privacy set forth in 3 Restatement (Second), Torts 652A. Those categories include "(a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that unreasonably places the other in a false light before the public." Goodrich v.Waterbury Republican-American, Inc., 188 Conn. 107, 128, 448 A.2d 1317
(1982). The court is concerned here with the first category. "An unreasonable intrusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns [in a manner which is) highly offensive to a reasonable person." (Emphasis added.) Blair v. Lafrance, Superior Court, judicial district of Waterbury, Docket No. 149622 (September 27, 2000, Rogers, J.), quoting Restatement (Second) Torts § 652B (1977). Therefore, invasion of privacy in the form of intrusion upon the seclusion of another is clearly an intentional tort.
The only actions alleged in the complaint that can reasonably be construed as constituting an intentional intrusion are the actions of Mauro. The plaintiff alleges that he sent her "unwelcome notes, cards, and letters professing his romantic interest in her" and also that he may have sent her a sexually explicit voice mail. (Complaint, Count One, ¶¶ 3.5.) She also alleges that Mauro was acting within the scope of CT Page 5521-bz his employment and within the scope of his general authority. (Complaint, Count One, ¶ 11.) As for the defendant, the plaintiff merely alleges that when she informed the defendant of Mauros actions, the defendant took no action other than to inform Mauro of the plaintiffs suspicions regarding the voice mail. (Complaint, Count One, ¶ 7.) The cited paragraphs from count one are incorporated by reference in count five.
Our Supreme Court "consistently [has] interpreted the exclusivity provision of the [Workers' Compensation Act], General Statutes § 31-284
(a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in willful or serious misconduct." Suarez v. DickmontPlastics Corp., 229 Conn. 99, 106, 639 A.2d 507 (1994). As mentioned above, however, the plaintiff has not alleged that the defendant employer committed an intentional tort, but that the defendant is vicariously liable for the actions of its employee, Mauro, in intruding upon the seclusion of the plaintiff. In order for the plaintiff to prevail against her employer in a claim alleging that a coworker committed an intentional tort against her, she must show "that the employer had directed or authorized the subject conduct or that the actor could be deemed the `alter ego' of the defendant's organization." Id., 106-07; see also Jettv. Dunlap, 179 Conn. 215, 425 A.2d 1263 (1979). The plaintiff does not allege that the defendant directed or authorized Mauro's conduct and she describes Mauro merely as a coworker, not even as a supervisory employee, much less the alter ego of the defendant's organization. Thus, the plaintiffs claim for invasion of privacy in the form of intrusion upon the seclusion of the plaintiff is barred by § 31-284. Therefore, the defendant's motion to strike count five is granted. Since the court grants the motion to strike on this ground, it unnecessary to reach the issue of whether count five adequately alleges the elements necessary to bring an action for invasion of privacy.
 IV. CONCLUSION
For the reasons herein stated, the court grants the defendant's motion to strike counts one, two, three and five. The motion to strike count four is denied. It is so ordered.